**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

STATE OF MINNESOTA, *ex rel. Governor Tim Walz and Attorney General Keith Ellison*,

Plaintiff,

v.

GREG ABBOTT*, in his official capacity as Governor of the State of Texas,* and

MANUEL TREVINO, *in his official capacity as Sheriff of Cameron County, Texas,*

Defendants.

Case No.: ____________________

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

## INTRODUCTION

1. Plaintiff State of Minnesota, on behalf of Governor Tim Walz and Attorney General Keith Ellison, brings this action for declaratory, injunctive, and mandamus relief to vindicate its right to enforce its criminal laws by obtaining the extradition of a fugitive who is charged with committing crimes within Minnesota's borders.

2. A Hennepin County District Court Judge in the State of Minnesota has found probable cause to believe that on January 14, 2026, Christian Castro was employed as an agent of U.S. Immigration and Customs Enforcement ("ICE") when he fired a gun at the front door of a home in Minneapolis, Minnesota, knowing that the home was occupied by multiple people, and that Castro's gunshot struck and injured a person inside

the home. The judge found probable cause to believe that because of this conduct, Castro committed four felony counts of second-degree assault with a dangerous weapon in violation of Minnesota law. The judge also found probable cause to believe that Castro committed a misdemeanor offense by falsely reporting a crime. The judge issued a nationwide warrant for Castro's arrest.

3. Soon after January 14, 2026, Castro left the State of Minnesota and traveled to the State of Texas. On May 29, 2026, Texas law enforcement found and arrested Castro pursuant to the nationwide warrant. At a hearing before a judge in Cameron County, Texas, Castro was ordered detained pending extradition proceedings.

4. The Office of Minnesota Governor Tim Walz promptly sent a request for Castro's extradition, including a governor's requisition warrant, to the Office of Defendant Texas Governor Greg Abbott. Under the Extradition Clause, the Federal Extradition Act, and the Uniform Criminal Extradition Act (which Texas has adopted), this request triggered a mandatory obligation for Governor Abbott to issue a governor's rendition warrant to Defendant Cameron County Sheriff Manuel Trevino to effectuate Castro's transfer back to the State of Minnesota for prosecution.

5. Instead of promptly fulfilling his ministerial duty to execute a governor's rendition warrant for Castro, as he has done routinely in response to extradition requests throughout his term in office, Governor Abbott has withheld the rendition warrant and held up Castro's extradition for nearly three months.

6. The Framers of the Constitution and Congress intended the interstate extradition process to be a swift, summary one in which the state into which a person

charged with a crime travels promptly returns the fugitive as soon as the requesting state demands it. *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987). Governor Abbott has a mandatory ministerial obligation to issue a governor's rendition warrant for Castro, and he is afforded no discretion to decline to do so. *Id.*

7. Governor Abbott has disregarded the requirements of the Constitution, federal law, and his own state's procedural rules in refusing to promptly make Castro available for extradition to Minnesota in compliance with Plaintiff's properly issued governor's requisition warrant. Governor Abbott's continued withholding of the rendition warrant threatens to undermine Plaintiff's constitutional and statutory rights to have Castro returned to Plaintiff for prosecution.

8. This threat is heightened by the State of Texas's 90-day limitation on the detention of fugitives awaiting extradition. Under the Texas Code of Criminal Procedure, if Governor Abbott continues to unlawfully withhold the rendition warrant, Castro may be eligible for release from custody as soon as August 26, 2026. If Defendants are permitted to release Castro from custody before turning him over to agents of Minnesota for extradition, there is a substantial risk that Castro will flee and avoid prosecution in Minnesota.

9. Plaintiff State of Minnesota seeks declaratory, injunctive, and mandamus relief to compel Defendants to comply with their mandatory duty to hand over Castro for extradition to Minnesota. At stake is not only Plaintiff's right to enforce its criminal laws but also a fundamental principle of interstate comity under our constitutional system of federalism.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this Complaint under 28 U.S.C. §§ 1331 and 1367.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2). Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

12. The Court has the authority to provide the relief requested under the Extradition Clause and the Extradition Act, as recognized by the Supreme Court in *Puerto Rico v. Branstad*, as well as 28 U.S.C. §§ 1651, 2201, 2202, and the Court's inherent equitable powers.

## PARTIES

13. Plaintiff State of Minnesota is a sovereign state of the United States of America. Minnesota sues on behalf of Governor Tim Walz, who is responsible for issuing requisition warrants to other state governors for local prosecuting authorities, Minn. Stat. § 629.23, and on behalf of its chief legal officer, Attorney General Keith Ellison, who is authorized to sue on the State's behalf, Minn. Stat. § 8.01.

14. Defendant Greg Abbott is the Governor of the State of Texas, and he is charged with issuing rendition warrants in response to extradition requests from other state governors. Governor Abbott is sued in his official capacity.

15. Defendant Manuel Trevino is the Sheriff of Cameron County, Texas, and he is charged with overseeing the operation of county jails in Cameron County. Sheriff Trevino is sued in his official capacity.

## LEGAL BACKGROUND

### *I. The State of Texas Has a Mandatory Constitutional Duty to Extradite Individuals Charged with Crimes in Other States*

16. The Extradition Clause of the United States Constitution "creates a mandatory duty to deliver up fugitives upon proper demand[.]" *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987). The Extradition Clause provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Art. IV, § 2, cl. 2.

17. "[T]he commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or courts of the asylum state." *Branstad*, 483 U.S. at 227 (citing *California v. Superior Ct. of Cal.*, 482 U.S. 400, 405-06 (1987)). The Extradition Clause's "mandatory language furthers its intended purposes: 'to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed,' and 'to preclude any state from becoming a sanctuary for fugitives from justice of another state.'" *Id.* (quoting *Michigan v. Doran*, 439 U.S. 282, 287 (1978)).

18. Governor Abbott has received a proper demand from the State of Minnesota, and he therefore has a mandatory "ministerial duty" to make Castro available for extradition to Minnesota pursuant to the Extradition Clause. *Id.* at 227-28.

### *II. The Federal Extradition Act Implements the Extradition Clause's Mandate That Extradition Is a Ministerial Act to be Implemented via a Summary Procedure*

19. To effectuate the Extradition Clause and establish a procedure for interstate extraditions, Congress enacted the Extradition Act of 1793. *Superior Ct. of Cal.*, 482 U.S. at 406-07. The Extradition Act provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, and Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.[1]

18 U.S.C. § 3182.

20. "By the express terms of federal law, therefore, the asylum State is bound to deliver up to the demanding State's agent a fugitive against whom a properly certified indictment or affidavit charging a crime is lodged." *Superior Ct. of Cal.*, 482 U.S. at 407. "The language, history, and subsequent construction of the Extradition Act make clear

---

[1] For purposes of § 3182, a prisoner awaiting extradition may be discharged from custody if no agent from the requesting state appears within 30 days of the prisoner's arrest on the rendition warrant issued by the governor of the asylum state (here, Texas). *See*, *e.g.*, *Smith v. State of Idaho*, 373 F.2d 149, 158-59 (9th Cir. 1967). Because no rendition warrant has been issued in this case, and the State of Texas has not yet made Castro available to be delivered to an agent of the State of Minnesota, § 3182's 30-day deadline is not yet relevant here. Moreover, the discharge language in § 3182 is permissive and "do[es] not mandate the release of a fugitive after 30 days[.]" *Ellis v. Hargrove*, 2003 WL 22080743, at *1 (5th Cir. Sept. 9, 2003) (unpub.).

that Congress intended extradition to be a summary procedure." *Id.* Therefore, the Supreme Court has repeatedly held that "extradition proceedings are to be kept within narrow bounds; they are emphatically not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *Id.* (internal quotation marks omitted) (collecting cases).

21. "The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him." *Sweeney v. Woodall*, 344 U.S. 86, 89 (1952).

### ***III. Texas Law Reaffirms that Governor Abbott Must Extradite Individuals Charged with Crimes in Other States***

22. Under Texas law, "[i]nterstate extradition is intended to be a summary and mandatory executive proceeding." *Ex Parte Lekavich*, 145 S.W.3d 699, 700 (Tex. App. 2004). "The role of the asylum state is essentially administrative." *Ex Parte Scott*, 476 S.W.3d 93, 95 (Tex. App. 2015) (citing *Doran*, 439 U.S. at 288, for the proposition that "interstate extradition should be a summary process"). Texas considers only "whether the extradition documents are valid on their face and whether the arrestee is the same person named in the request." *Id.* (citation omitted). "The asylum state is not concerned with more substantive matters such as the guilt or innocence of the arrestee or the presence of probable cause because those are issues to be resolved by the courts of the demanding state." *Id.* (citations omitted).

23. The Texas Code of Criminal Procedure contains a clear requirement that, consistent with the Extradition Clause and the Extradition Act, Texas must respond to an extradition request from the governor of another state by returning the fugitive: "A person in any other State of the United States charged with treason or any felony who shall flee from justice and be found in this State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Tex. Code Crim. P. art. 51.01.

24. Texas has adopted the Uniform Criminal Extradition Act, which provides that "it is the duty of the Governor of [Texas] to have arrested and delivered up to the Executive Authority of any other State of the United States any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in [Texas]." *Id.* at art. 51.13 § 2.

25. The Uniform Criminal Extradition Act provides the procedure for a fugitive who is arrested in Texas to be extradited to the state in which the fugitive is charged. In relevant part, the procedure requires that (1) the demanding state makes a written demand (often referred to as the "governor's requisition warrant") for the person's extradition that includes a copy of an affidavit before a magistrate charging the person with committing a crime and a warrant, *id.* at art. 51.13 § 3; and (2) the Governor of Texas signs a warrant of arrest (often referred to as the "governor's rendition warrant" or "governor's extradition warrant") and directs a peace officer to execute it, *id.* at art. 51.13 § 7.

26. A fugitive who is arrested in Texas and is awaiting extradition is entitled to a hearing before a magistrate. The fugitive may be ordered to pay bail or may be

committed to jail pending extradition. The fugitive may not be committed to jail for longer than 90 days if he is not arrested on a governor's rendition warrant issued by the Governor of Texas. *Id.* at arts. 51.05, 51.07 & 51.13 §§ 15, 17.

27. As a result of this 90-day limitation on detention pending the issuance of a governor's rendition warrant, Texas courts refer to a rendition warrant as "timely" if it is issued within 90 days of the fugitive's arrest pursuant to a fugitive warrant in Texas. *See, e.g.*, *Ex Parte Wall*, 2012 WL 5869595, at *5-7 (Tex. App. Nov. 21, 2012) (not designated for publication).

### *IV. Texas and Minnesota Routinely Facilitate Prompt Extraditions to Each Other Consistent with the Constitution and with Federal and State Law*

28. Governor Abbott's failure to issue a rendition warrant in response to Minnesota's request for Castro's extradition is unusual and inconsistent with historical practice.

29. During the last five years, the State of Minnesota has sought extradition from the State of Texas of approximately 11 individuals charged with crimes in Minnesota. Governor Abbott signed governor's rendition warrants in response to each of Governor Walz's requisition warrants in an average of less than 30 days from when Minnesota sent its requests. These included an extradition request for an individual charged with second degree assault—the same crime with which Castro is charged—for which Governor Abbott signed a rendition warrant 17 days after the State of Minnesota sent its requisition warrant.

30. During the same time, Governor Walz has also promptly executed governor's rendition warrants in response to extradition requests from the State of Texas, in compliance with the Constitution, federal law, and Minnesota law. Over the last five years, the State of Texas has sought extradition from the State of Minnesota of approximately 21 individuals charged with crimes in Texas. Governor Walz signed governor's rendition warrants in response to each of Governor Abbott's requisition warrants in an average of less than 5 days from when Texas sent its requests. These include two extradition requests for which Governor Walz has signed rendition warrants in 10 days or less during the time Minnesota's extradition request for Castro has been pending with Governor Abbott's office.

31. On May 21, 2026—12 days before the State of Minnesota sent the governor's requisition warrant for Castro to Governor Abbott's office—Minnesota submitted extradition requests to Texas for two other individuals charged in unrelated cases with felonies in Minnesota. Governor Abbott's office issued rendition warrants for those two defendants on June 30, 2026, and July 1, 2026, respectively. Both governor's rendition warrants were issued during the time Castro's extradition request was pending with Governor Abbott's office. Although nearly two more months have passed, Governor Abbott continues to withhold the governor's rendition warrant for Castro.

32. On June 24, 2026—approximately three weeks after the State of Minnesota sent the governor's requisition warrant for Castro to Governor Abbott's office—Minnesota submitted an extradition request to Texas for a different individual charged with a felony in another unrelated case in Minnesota. Governor Abbott signed a rendition

warrant for that defendant on August 5, 2026, and issued it to the Hidalgo County Sheriff's Office for execution on August 13, 2026.

**FACTUAL ALLEGATIONS**

33. On May 18, 2026, Christian Castro was charged in Hennepin County, Minnesota, with four felony counts of second-degree assault with a dangerous weapon and one misdemeanor count of falsely reporting a crime. Exhibit A, 17-27. The complaint was accompanied by the affidavit of a Special Agent of the Minnesota Bureau of Criminal Apprehension ("BCA") setting forth facts underlying each of the five charged offenses. *Id.* at 19-24. The complaint was signed by the BCA Special Agent, by an Assistant Hennepin County Attorney, and by a Hennepin County District Court Judge, who determined that the sworn affidavit established probable cause to support Castro's arrest. *Id.* at 24-25. At the time the complaint was issued, Castro's whereabouts were unknown. *Id.* at 23.

34. That same day, the Hennepin County District Court Judge issued a warrant for Castro's arrest, to be executed nationwide. *Id.* at 25.

35. On May 29, 2026, Texas law enforcement officers found and arrested Castro pursuant to the nationwide warrant. *Id.* at 8. Castro was booked into jail in Cameron County. *Id.*

36. On June 2, 2026, Minnesota Governor Tim Walz executed a governor's requisition warrant for Castro. Exhibit A. Governor Walz's office sent the governor's requisition warrant and supporting documentation to the Office of Governor Abbott and requested that Governor Abbott issue a governor's rendition warrant, forward the

rendition warrant to Sheriff Trevino, and direct Sheriff Trevino to notify the Hennepin County Sheriff's Office in Minnesota when Castro was available for release. *Id*. at 1. Governor Abbott's office received Governor Walz's requisition warrant and supporting documentation on June 3, 2026.

37. On June 4, 2026, Castro appeared before a judge in Cameron County, Texas. At the hearing, the judge advised Castro of the offenses with which he was charged in Minnesota, of his right to counsel, of his right to petition for a writ of habeas corpus, and of his right to either waive or refuse to waive extradition proceedings. Castro declined to waive extradition proceedings, and the judge ordered that he be committed to jail pending extradition proceedings.

38. After sending the governor's requisition warrant and supporting documentation to Texas, officials with the Office of Minnesota Governor Tim Walz and the Hennepin County Attorney's Office were initially in regular communication with extradition officials in the Office of Governor Abbott.

39. On June 23, 2026, Governor Abbott's State Extradition Coordinator informed Governor Walz's staff that she was hoping to have the signed paperwork for Castro's extradition back by the next day. This timing would have adhered to historical practice, under which Governor Abbott has signed governor's rendition warrants in response to Minnesota's requests for extradition in an average of less than 30 days.

40. But Governor Abbott did not sign the governor's rendition warrant for Castro the next day. Instead, a week later, on June 30, 2026, the State Extradition Coordinator instructed Governor Walz's office to direct its communications to a new

point of contact—Governor Abbott's Deputy General Counsel—and reported that Castro's extradition paperwork was on the Deputy General Counsel's desk.

41. On the same day, June 30, 2026, and again on July 1, 2026, Governor Abbott signed governor's rendition warrants to extradite two other defendants in unrelated cases to Minnesota. Governor Walz's office sent the governor's requisition warrants and supporting documentation to Governor Abbott's office for the two other defendants on May 21, 2026, shortly before sending the governor's requisition warrant for Castro.

42. Throughout July 2026, officials in Governor Walz's office made repeated efforts to communicate with Governor Abbott's office about the governor's rendition warrant for Castro. Governor Abbott's Deputy General Counsel repeatedly told them that he had no updates to provide and would provide an update when one was available. Four more weeks have passed, and Governor Abbott's office has not provided any update.

43. On July 30, 2026, Hennepin County Attorney Mary Moriarty sent a letter to Governor Abbott requesting that he review and sign Castro's extradition paperwork.

44. On August 5, 2026, Governor Abbott signed a governor's rendition warrant to extradite a third defendant in another unrelated case to Minnesota. Governor Walz's office sent the governor's requisition warrant and supporting documentation for this third defendant to Governor Abbott's office on June 24, 2026, while the request for Castro's extradition was pending.

45. On August 13, 2026, Minnesota Attorney General Keith Ellison sent a letter to Governor Abbott setting forth Governor Abbott's legal duty to extradite Castro to Minnesota and providing Castro with notice that if he did not execute a rendition warrant

by 5:00 p.m. on Monday, August 17, then Minnesota would be forced to bring a lawsuit to protect its right to prosecute a person charged with committing crimes within its borders.

46. To date, Governor Abbott has not responded to either letter and has continued to withhold the governor's rendition warrant necessary to effectuate Castro's extradition to Minnesota.

47. On information and belief, law enforcement's initial review of Castro's Cameron County jail calls reflects that Castro has substantial ties to Mexico and there is a real risk that he may flee and avoid prosecution if he is released from custody. Castro would be released close to the Mexican border. Castro is fluent in Spanish and has been in frequent communication with a woman in Mexico, including about marrying her and buying a house in Mexico when he is released.

48. Governor Abbott's continued withholding of the rendition warrant and Sheriff Trevino's continued failure to make Castro available for extradition threaten to deprive the State of Minnesota entirely of its constitutional right to Castro's return. Specifically, because Texas law mandates Castro's discharge from custody after 90 days, Defendants' continued refusal to offer him for extradition will soon provide Castro with an opportunity to flee and avoid prosecution in Minnesota. Such an outcome is directly contrary to the Extradition Clause's intended purpose of enabling states to bring offenders to trial as swiftly as possible.

**CAUSES OF ACTION**

**COUNT I**

**U.S. Constitution, Article IV, Section 2, Clause 2**

**Extradition Clause**

49. Plaintiff realleges and incorporates by reference the foregoing allegations as fully set forth herein.

50. The Extradition Clause of the United States Constitution "creates a mandatory duty to deliver up fugitives upon proper demand[.]" *Branstad*, 483 U.S. at 227; U.S. Const. art. IV, § 2 cl. 2.

51. On June 2, 2026, the State of Minnesota made a proper demand for Castro's extradition from the State of Texas. This triggered Governor Abbott's mandatory duty to execute a rendition warrant and extradite Castro to the State of Minnesota.

52. Governor Abbott's continued withholding of the governor's rendition warrant to extradite Castro to Minnesota threatens Minnesota's sovereign right to enforce its criminal laws and prosecute those who commit crimes within its borders.

53. Governor Abbott lacks any lawful basis to withhold the governor's rendition warrant for Castro. When a state in which a fugitive is located fails in its constitutional duty to extradite a fugitive to a requesting state—as Defendants have done here—the Extradition Clause entitles the requesting state to mandamus relief. *Branstad*, 483 U.S. at 227-28; *Alabama v. Engler*, 85 F.3d 1205, 1208, 1210 (6th Cir. 1996).

54. The actions of Texas state authorities to date indicate that Governor Abbott will continue to withhold the governor's rendition warrant and Defendants will continue

to violate their mandatory duty to extradite Castro to the State of Minnesota if not ordered to comply with it.

55. As set forth above, Defendants' continued failure to make Castro available for extradition threaten to deprive the State of Minnesota entirely of its constitutional right to Castro's return by providing Castro with an opportunity to flee and avoid prosecution in Minnesota.

**COUNT II**
**18 U.S.C. § 3182**
**Extradition Act**

56. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

57. The Extradition Act was enacted to effectuate the Extradition Clause and provide a procedure for its enforcement. *Superior Court of California*, 482 U.S. at 406-07; 18 U.S.C. § 3182. "The language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure." *Superior Court of California*, 482 U.S. at 407.

58. Governor Abbott has refused to sign a governor's rendition warrant for Castro, and the Defendants have refused to promptly make Castro available to the State of Minnesota for extradition, in violation of the Extradition Act.

59. As set forth above, Defendants' continued failure to extradite Castro threatens to deprive the State of Minnesota entirely of its federal statutory right to Castro's return by providing Castro with an opportunity to flee and avoid prosecution in Minnesota.

## COUNT III
## Tex. Code Crim. Proc. Art. 51.13, § 2
## Uniform Criminal Extradition Act

60. Plaintiffs realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

61. Consistent with the Constitution and federal law, Texas law requires that the Governor of Texas return a fugitive in response to an extradition request from another state. Tex. Code Crim. P. arts. 51.01 & 51.13 § 2.

62. By withholding a governor's rendition warrant for Castro and refusing to return Castro to Plaintiff for extradition, Defendants are acting in violation of Texas law.

63. Because Texas law imposes a 90-day limit on a fugitive's detention pending extradition, *see* Tex. Code Crim. P. art. 51.05, Defendants' continued refusal to extradite Castro threatens to render meaningless Plaintiff's right to Castro's return under the Constitution, federal law, and Texas law.

64. Plaintiff is entitled to a declaration that Defendant Governor Abbott's withholding of a governor's rendition warrant for Castro violates Texas law and an injunction prohibiting Defendants from discharging Castro from custody until Castro is delivered to Plaintiff's duly authorized agents for extradition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that the Court grant the following relief:

a) Declare that Defendant Governor Abbott's withholding of a governor's rendition warrant for Christian Castro is unconstitutional and unlawful;

b) Issue a writ of mandamus to compel Defendant Governor Abbott to issue forthwith a governor's rendition warrant commanding that Defendant Sheriff Trevino and the Cameron County Sheriff's Office deliver Christian Castro to a duly authorized agent of the State of Minnesota for extradition;

c) Preliminarily enjoin Defendants from discharging Christian Castro from custody until Castro is delivered to a duly authorized agent of the State of Minnesota pursuant to a governor's rendition warrant;

d) Award the Plaintiff its costs and reasonable attorneys' fees; and

e) Order such other and further relief as this Court deems just and appropriate.

Dated: August 18, 2026

Respectfully submitted,

/s/ *George C. Lobb, Esq.*
GEORGE C. LOBB, ESQ.
TX State Bar No. 24042928
S.D. Tex. Bar No. 1439085
2028 Ben White Blvd.
Suite 240-8990
Austin, TX 78741
(737) 396-2662
Inboxforlawoffice@iCloud.com

KEITH ELLISON
Attorney General
State of Minnesota

/s/ *Peter J. Farrell*
PETER J. FARRELL*
Acting Solicitor General
Attorney-in-Charge
MN State Bar No. 0393071

KIMBERLY SVENDSEN*
Special Counsel
MN State Bar No. 0504097
LINDSEY MIDDLECAMP*
Special Counsel
MN State Bar No. 0392589
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1424
peter.farrell@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota, ex rel. Governor Tim Walz and Attorney General Keith Ellison*

**Pro hac vice application forthcoming*