# EXHIBIT A

Office of Governor Tim Walz &
Lt. Governor Peggy Flanagan

June 2, 2026

Gabby Gomez
Office of the Governor
1100 San Jacinto Boulevard
Austin, TX 78701
(512) 463-1788

**Re:** *Interstate Rendition of* **Christian J. Castro, a/k/a Christian Jeremiah Castro, a/k/a Christian Castro**

Dear Ms. Gomez:

I am enclosing Governor Walz's requisition warrant covering the above fugitive. Upon approval, please forward your rendition warrant to:

Sheriff Manuel Trivino
Cameron County Sherriff's Department
Rucker Detention Center
7100 Old Alice Road
Almito, TX 78575

with a request that they notify:

Deputy Sheriffs Zachary Bruce and Thomas Braesch
Hennepin County Sheriff's Office
Courthouse Room 6
350 South 5th Street
Minneapolis, MN 55415

when the fugitive is available for release to our Minnesota agent.

Sincerely,

Erin Bauer
Special Assistant to the General Counsel
(612) 422-8332
Erin.Bauer@state.mn.us

cc: Manuel Trivino, Cameron County Sheriff's Office (TX)
Mary Moriarty, Hennepin County Attorney (MN)

# STATE *of* MINNESOTA

## Governor Tim Walz

### TO HIS EXCELLENCY THE GOVERNOR OF TEXAS

**Whereas,** it appears by the attached supporting documents, which I certify to be authentic and duly authenticated in accordance with the laws of this State, **Christian J. Castro, a/k/a Christian Jeremiah Castro, a/k/a Christian Castro** (the "fugitive") was charged by complaint with **four felony counts of Assault – 2nd degree – Dangerous Weapon and misdemeanor Falsely Reporting Crime** which I certify to be **crimes** under the laws of this State, was present in the State of **Minnesota** at the time of commission of the crimes, has since fled from the jurisdiction of the State of **Minnesota**, and is now a fugitive, and may now be found in the State of **Texas.**

**Now, therefore**, pursuant to the Constitution and laws of the United States, and the laws of the State of **Minnesota** and the State of **Texas** I hereby request that the fugitive be apprehended and delivered to **Hennepin County Sheriff Dawanna Witt, and/or authorized designee(s)** who is/are authorized to convey the fugitive to the State of **Minnesota**, there to be dealt with according to law.

**In witness whereof**, I have hereunto set my hand and caused the Great Seal of the State to be affixed at the Capitol in the City of Saint Paul on June 2, 2026.

T. J. Walz

**Tim Walz,** GOVERNOR

Steve Simon

**Steve Simon,** SECRETARY OF STATE

Filed June 2, 2026
Office of the Minnesota
Secretary of State
Steve Simon

# STATE *of* MINNESOTA

Governor Tim Walz

TO ALL TO WHOM THESE PRESENTS COME:

By these presents I authorize and empower **Hennepin County Sheriff Dawanna Witt,** and/or designated agent(s) to take and receive from the proper authorities of the State of **Texas**

**Christian J. Castro, a/k/a Christian Jeremiah Castro, a/k/a Christian Castro**

and convey the fugitive at the exclusive cost of **Hennepin County** to the State of **Minnesota**, there to be dealt with according to law.

**In witness whereof**, I have hereunto set my hand and caused the Great Seal of the State to be affixed at the Capitol, in the City of Saint Paul, on June 2, 2026.

**Tim Walz,** GOVERNOR

**Steve Simon,** SECRETARY OF STATE

Filed June 2, 2026
Office of the Minnesota
Secretary of State
Steve Simon

# STATE *of* MINNESOTA

Department of State | Secretary of State Steve Simon

I, **Steve Simon**, certify that I am the duly elected, qualified and acting Secretary of the State of Minnesota, and by virtue of Minnesota law the keeper of its Great Seal and the custodian of its laws;

That the **Honorable Tim Walz**, whose name appears on the foregoing papers, was at the time of signing the duly elected, qualified and acting Governor of the state; that I am acquainted with his handwriting and believe the signature to be genuine.

That **Mary F. Moriarty,** whose name appears on the foregoing papers, was at the time of signing the duly elected or appointed and qualified county attorney in and for the County of Hennepin in this state; that I am acquainted with their handwriting and believe the signature to be genuine.

That **Sara Gonsalves,** whose name appears on the foregoing papers, was at the time of signing the duly appointed and qualified court administrator in and for the County of Hennepin in this state; that I am acquainted with their handwriting and believe the signature to be genuine.

That the **Honorable Kerry W. Meyer,** whose name appears on the foregoing papers, was at the time of signing the duly elected or appointed and qualified judge of the District Court in and for the County of Hennepin in this state; that I am acquainted with their handwriting and believe the signature to be genuine.

That the **Honorable Paul R. Scoggin,** whose name appears on the foregoing papers, was at the time of signing the duly elected or appointed and qualified judge of the District Court in and for the County of Hennepin in this state; that I am acquainted with their handwriting and believe the signature to be genuine.

Signed on June 2, 2026.

Steve Simon

**Steve Simon,** SECRETARY OF STATE

Filed June 2, 2026
Office of the Minnesota
Secretary of State
Steve Simon

**APPLICATION FOR EXTRADITION
BY PROSECUTING ATTORNEY**

TO THE GOVERNOR OF THE STATE OF MINNESOTA:

I, Mary F. Moriarty, have the honor to request that you issue a requisition upon the governor of the State of Texas for the extradition of Christian J. Castro, who stands charged by Complaint/Warrant with four (4) counts of the crime(s) of Assault-2nd Degree-Dangerous Weapon; and Falsely Reporting Crime, Minn. Stat. § 609.222.1, with reference to: 609.222.1, 609.11.5(a); and 609.505.1, with reference to: 609.505.1, committed in the County of Hennepin, State of Minnesota, on January 14, 2026, and who subsequently fled from the jurisdiction of this state and is now a fugitive from justice. I am informed that the accused is within the jurisdiction of the State of Texas, in the City of Almito, is now under arrest, and is in the custody of Manuel Trivino, Sheriff of Cameron County, at the following address:

Rucker Detention Center
7100 Old Alice Road
Almito, TX 78575

Attached to this application and incorporated by reference are certified copies of the Complaint/Warrant and the warrant of arrest issued thereon and a copy of the statutes forming the basis for the charge against the accused and defining the punishment.

I hereby certify that the accused was present in this state at the time of the commission of the crime charged; that in my opinion the ends of justice require that the accused be arrested and returned to the State of Minnesota for trial at public expense; that I am willing such public expense shall be a charge upon the County of Hennepin; and that this application is made in good faith and for the sole purpose of prosecuting the accused for the crime charged, and not to enforce a private claim.

I nominate Officers Zachary Bruce and Thomas Braesch, Deputy Sheriffs of County of Hennepin in this state, as the proper persons to be appointed as the agents of the state to receive and return

the accused to the State of Minnesota. I certify that the nominees have no personal or private interest in the arrest and return of the accused other than the proper performance of official duty.

MARY F. MORIARTY
County Attorney
Hennepin County, Minnesota

Subscribed and sworn to before me
this 2 day of June 2026

Notary Public
Hennepin County, Minnesota

TRACY A. TIERNEY
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2031
Commission #20099870

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| STATE OF MINNESOTA<br>V.<br>CHRISTIAN J. CASTRO, DEFENDANT | AFFIDAVIT OF IDENTIFICATION<br><br>MNCIS No: 27-CR-26-12537<br>C.A. File No: 26A05307 |

---

James Reyerson of the Minnesota Department of Public Safety, Minnesota Bureau of Criminal Apprehension, being duly sworn, states:

1. I am a Special Agent in Charge in the Minnesota Department of Public Safety, Minnesota Bureau of Criminal Apprehension.

2. The Hennepin County Sheriff's Office has a warrant for the arrest of Christian J. Castro for the felony offenses of four counts of: Assault-2nd Degree-Dangerous Weapon and a misdemeanor count of Falsely Reporting Crime.

3. Christian J. Castro's DOB is [redacted]1973. He is a Hispanic male, 5'10" in height with a weight of 196 pounds with a shaved head and brown eyes.

4. Christian J. Castro was previously booked in Cameron County, Texas on May 29, 2026. Attached find the Cameron County Sheriff's Department booking report (Exhibit A) and an enlarged copy of the booking photo from Cameron County (Exhibit B).

5. Attached as Exhibit C is a copy of Christian J. Castro's Texas driver's license photo.

6. Attached as Exhibit D is a copy of the photo taken of Christan J. Castro in my presence at the time of his apprehension in Texas.

7. I have compared the booking information and booking photo and driver's license photos from Exhibits A, B, C, and D and confirm they are same person, Christian J. Castro.

8. I declare under penalty of perjury that everything that I have stated in this document is true and correct. Minn. Stat. § 358.116.

James Reyerson

County and State where signed:
Hennepin County, Minnesota

# BOOKING REPORT

## CAMERON COUNTY SHERIFF'S DEPARTMENT

FILE NO/SO NUMBER: 295823

DATE BOOKED:

CLASSIFICATION TYPE:

CURRENT CLASS:

PAGE 1 OF 2

CURRENT CELL: F-121 INFIRMARY SINGLE CELL

CUSTODY STATUS: O. OTHERS

### IDENTIFICATION

NAME: CASTRO, CHRISTIAN JEREMIAH

TRN:

SID:

BOOKING NUMBER: 202631242

ALIAS NAME(S): CASTRO, CHRISTIAN; CASTRO, CHRISTIAN J.

USDM NUMBER:

IMAGE



| RACE | SEX | ETHNICITY | DATE OF BIRTH | AGE | MARITAL STAUTS | DL / ID NO. & STATE |
|---|---|---|---|---|---|---|
| W | M | HISPANIC | [redacted]1973 | 52 | SEPARATE | |

| HEIGHT | WEIGHT | HAIR | EYES | BUILD | COMPLEXION | SOCIAL SECURITY NO. |
|---|---|---|---|---|---|---|
| 5 FT. 10 IN. | 196 | UNKNOWN | BROWN | MEDIUM | MEDIUM | [redacted] |

SCARS, MARKS, TATTOOS, AMPUTATIONS:

ADDRESS: [redacted] MCALLEN TX 78504

PHONE: HOME: 808-209-5414

PLACE OF BIRTH: HAWAII, HI UNITED STATES

GANG AFFILIATION:

### EMER

EMERGENCY CONTACT NAME: HOLLY CABATBAT

RELATIONSHIP: SISTER

EMERGENCY CONTACT ADDRESS & PHONE: 808-277-8552

PHONE NUMBER(S) CALLED AT BOOKING: 808-277-8552

OCCUPATION:

EMPLOYER:

WORKPHONE: 808-209-5414

### ARREST

ARRESTING AGENCY: DEPARTMENT OF PUBLIC SAFETY

ARRESTING OFFICER: 15914, HERRERA, OSCAR, JR.

ARREST DATE: 05/29/2026

ARREST TIME: 10:56 AM

WHERE ARRESTED:

BOOKING OFFICER:

BOOKING DATE:

TIME:

SCH. RLSE DATE:

ACTUAL RELEASE DATE:

HOW RELEASED:

RELEASED TO:

### CHARGES

| HOLD REASON | WARRANT/REF. | OFFENSE | DEG. | BOND AMOUNT | BOND TYPE | FINE |
|---|---|---|---|---|---|---|
| OTHER AGENCY HOLD | 26000126 | ASSLT DANGEROUS WPN 26000126 HENNEPIN CO MN | Second Degree Felony | | | |
| OTHER AGENCY HOLD | 26000126 | ASSLT DANGEROUS WPN (INCLUDED IN ABOVE INDICTMENT) | Second Degree Felony | | | |
| OTHER AGENCY HOLD | 26000126 | ASSLT DANGEROUS WPN (INCLUDED IN ABOVE INDICTMENT) | Second Degree Felony | | | |
| OTHER AGENCY HOLD | 26000126 | ASSLT DANGEROUS WPN (INCLUDED IN ABOVE INDICTMENT) | Second Degree Felony | | | |
| OTHER AGENCY HOLD | 26000126 | FALSELY REPORTING CRIME (INCLUDED IN ABOVE INDICTMENT) | Class A Misdemean or | | | |

### HOLDS

| HOLD STATUS | HOLD TYPE | COMMENTS |
|---|---|---|
| ACTIVE | PENDING EXTRADITION | |
| ACTIVE | PENDING MAGISTRATION | |

Booking photo (enlarged) - Cameron County Sheriff's Department



**EXHIBIT B**






**EXHIBIT D**

[Exhibit A, p. 11]

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

STATE OF MINNESOTA
V.
CHRISTIAN J. CASTRO, DEFENDANT

AFFIDAVIT OF IDENTIFICATION

MNCIS No: 27-CR-26-12537
C.A. File No: 26A05307

---

Nicolai Lyfoung of the Minnesota Department of Public Safety, Minnesota Bureau of Criminal Apprehension, being duly sworn, states:

1. I am an Assistant Special Agent in Charge in the Minnesota Department of Public Safety, Minnesota Bureau of Criminal Apprehension.

2. The Hennepin County Sheriff's Office has a warrant for the arrest of Christian J. Castro for the felony offenses of four counts of: Assault-2nd Degree-Dangerous Weapon and a misdemeanor count of Falsely Reporting Crime.

3. Christian J. Castro's DOB is [redacted]1973. He is a Hispanic male, 5'10" in height with a weight of 196 pounds with a shaved head and brown eyes.

4. On May 26, 2026, I took a statement from Mirthala Villegas, who has been married to Christian J. Castro since April 2024.

5. In her statement, Mirthala Villegas reported that in March 2026, Christian J. Castro told her he had traveled to be in Minnesota in December 2025 and January 2026 for his employment with ICE. Christian J. Castro told Ms. Villegas that he was under investigation for an incident that occurred while he was in Minnesota. As Christian J. Castro described the incident to her, he was chasing a Venezuelan who fled in his vehicle, he chased the vehicle and, when he got to the person he was chasing, he fell onto the ground. Christian J. Castro stated to her that two other Venezuelans came and started to hit him in the head and face and that he shot one in the butt.

6. As an investigator in this case, the information given by Ms. Villegas is consistent with the evidence the Minnesota Bureau of Criminal Apprehension has gathered: that Christian Castro was in Minnesota on January 14, 2026, and he shot a man who was fleeing.

7. I declare under penalty of perjury that everything that I have stated in this document is true and correct. Minn. Stat. § 358.116.

Nicolai Lyfoung

County and State where signed:
Hennepin County, Minnesota

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

STATE OF MINNESOTA
V.
CHRISTIAN J. CASTRO, DEFENDANT

MNCIS No: 27-CR-26-12537
C.A. File No: 26A05307

---

I, Mary F. Moriarty, being duly sworn, state that I am the duly elected or appointed and acting county attorney of Hennepin County, Minnesota, and that the facts stated in this application are true.

I declare under penalty of perjury that everything that I have stated in this document is true and correct. Minn. Stat. § 358.116.

MARY F. MORIARTY
County Attorney
Hennepin County Minnesota

County and State where signed:
Hennepin County, Minnesota

TO THE GOVERNOR:

I have examined and approved this application and accompanying papers. In my opinion it is proper for you to issue a requisition warrant.

Dated: June 2, 2026

KEITH ELLISON
Minnesota Attorney General

Assistant Attorney General

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

STATE OF MINNESOTA
V.
CHRISTIAN J. CASTRO, DEFENDANT

MNCIS No: 27-CR-26-12537
C.A. File No: 26A05307

---

I, Kerry W. Meyer, Chief Judge of the Fourth Judicial District in and for the County of Hennepin, State of Minnesota, hereby certify that I am a duly elected or appointed and qualified judge of the District Court; and that in my opinion, Zachary Bruce and Mary F. Moriarty, whose names appear on the affidavits herein are reputable persons, are to be believed; and that the facts stated in the affidavits present a proper case for requisition.

Dated: June 2, 2026

Kerry W Meyer
Judge of District Court

I, Sara Gonsalves, Court Administrator for the County of Hennepin, State of Minnesota, hereby certify that the Honorable Judge Kerry W. Meyer, whose name is subscribed to the foregoing certificate, is and was at the time of making the same, a duly elected or appointed and qualified judge of the District Court in and for said county, and that her official acts are entitled to full faith and credit; that I am well acquainted with her handwriting and believe the signature to be genuine.

Signed and sealed this 2nd day of June, 2026, at the City of Minneapolis, County of Hennepin, State of Minnesota.

[signature]
Court Administrator

(COURT SEAL)

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

STATE OF MINNESOTA
V.
CHRISTIAN J. CASTRO, DEFENDANT

MNCIS No: 27-CR-26-12537
C.A. File No: 26A05307

---

I, Sara Gonsalves, hereby certify that I have compared the attached papers with the original Complaint/Warrant, on file in my office in the County of Hennepin, State of Minnesota, and find them to be true, correct and complete copies thereof.

Signed and sealed this 2nd day of June, 2026, at the City of Minneapolis, County of Hennepin, State of Minnesota.

(COURT SEAL)

Sara Gonsalves
Court Administrator

I, Kerry W. Meyer, Chief Judge of the Fourth Judicial District in and for the County of Hennepin, State of Minnesota, hereby certify that Sara Gonsalves, whose name is subscribed to the foregoing certificate, is and was at the time of making the same, the duly appointed and qualified Court Administrator for the County of Hennepin, and the keeper of the court's seal and custodian of its files and records, and that her official acts are entitled to full faith and credit; that I am well acquainted with her handwriting and believe the signature to be genuine.

Dated June 2, 2026

Kerry W Meyer
Judge of District Court

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| STATE OF MINNESOTA<br>V.<br>CHRISTIAN J. CASTRO, DEFENDANT | MNCIS No: 27-CR-26-12537<br>C.A. File No: 26A05307 |

---

I, Sara Gonsalves, further certify that the Honorable Kerry W. Meyer, whose name is subscribed to the certificate of attestation above, is and was at the time of making the same, the duly elected or appointed and qualified Chief Judge of the Fourth Judicial District in and for the County of Hennepin, State of Minnesota, and that her official acts are entitled to full faith and credit; that I am well acquainted with her handwriting and believe the signature to be genuine.

Signed and sealed this 2nd day of June, 2026, at the City of Minneapolis, County of Hennepin, State of Minnesota.

(COURT SEAL)

[signature]
Court Administrator

State of Minnesota
County of Hennepin

District Court
4th Judicial District

Prosecutor File No. 26A05307
Court File No. 27-CR-26-12537

**State of Minnesota,**
Plaintiff,

vs.

**CHRISTIAN J. CASTRO DOB: [redacted]1973**

MN

Defendant.

**COMPLAINT**

Warrant

The Complainant submits this complaint to the Court and states that there is probable cause to believe Defendant committed the following offense(s):

**COUNT I**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 1 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT II**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 2 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT III**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000

Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 3 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT IV**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 4 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT V**

**Charge: Falsely Reporting Crime**
Minnesota Statute: 609.505.1, with reference to: 609.505.1
Maximum Sentence: 90 DAYS AND/OR $1,000
Offense Level: Misdemeanor

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro informed a law enforcement officer that a crime had been committed, or otherwise provided information to an on-duty peace officer regarding the conduct of others, knowing that such information was false and intended that the officer act in reliance upon it.

## STATEMENT OF PROBABLE CAUSE

Complainant has investigated the facts and circumstances of this offense and believes the following establishes probable cause:

On January 14, 2026, at approximately 6:43:49 PM, the Minneapolis Police Department ("MPD") received a report from a 911 dispatcher that U.S. Immigration and Customs Enforcement ("ICE") agents were engaged in a vehicle pursuit of a male traveling in a Ford Focus and that the male, later identified as Victim 2, was attempting to reach his home, which was identified as XXX 24th Ave. N. in Minneapolis, Hennepin County, Minnesota. At 6:45 PM, MPD officers took remote-control of a city camera located at the intersection of Lyndale Ave. and 24th Ave. and pointed it at the home. The camera captured a series of events that culminated in an ICE agent, later identified as Christian Castro (hereinafter "Defendant"), firing a gunshot into the home, knowing it was occupied by multiple individuals, and injuring a male, later identified as Victim 1.

Video of Incident

The shooting of Victim 1 led to an investigation conducted by the Minnesota Bureau of Criminal Apprehension ("BCA"). As part of its investigation, the BCA recovered footage from the city camera at Lyndale and 24th, which captured the following events:

At 6:47 PM, Victim 1 stepped onto the front lawn of the home holding a snow shovel. At 6:48:36 PM, two vehicles arrived in the area and abruptly stopped approximately 100 feet east of the home. At 6:48:45 PM, Victim 2 emerged from the first vehicle and ran toward the home. Defendant emerged from the second vehicle and pursued Victim 2 on foot. At 6:48:50 PM, Victim 1 tossed the shovel onto the ground, where it remained throughout the incident, and stepped back toward the front door of the home. At 6:48:52 PM, Victim 2 reached the front of the home but slipped on the ground before he could reach the front door. At 6:48:55 PM, Defendant caught up to Victim 2, jumped on top of Victim 2, and engaged in a brief struggle with Victim 2 on the ground in front of the home. At 6:48:57 PM, Defendant rolled off Victim 2 and onto the ground while Defendant continued efforts to grasp onto Victim 2. At 6:49:01 PM, Victim 1 approached Victim 2 and reached down, appearing to separate Victim 2 from Defendant and help Victim 2 off the ground. At 6:49:04 PM, Victim 1 and Victim 2 ran to the front door of the home, out of camera-view at 6:49:06 PM. At 6:49:08 PM, Defendant got off the ground and stood several feet from the front door of the home, just as additional ICE vehicles were arriving on 24th Ave. approximately 100 feet east of the home. At 6:49:09 PM, as Defendant faced the front door of the home, Defendant raised both of his arms straight out in front of him, pointing toward the front door. Defendant's movements between 6:49:09 PM and 6:49:10 PM are consistent with Defendant firing a gun at the front door of the home. Defendant then stepped back and spoke to an arriving ICE agent.

Reports of Shooting, Statement of Victim 3, and Immediate Scene Response

Immediately after this incident, MPD received multiple reports of a single gunshot occurring in front of XXX 24th Ave. N. One of those reports was from "ShotSpotter," an acoustic gunshot detection system which utilizes a network of sensors installed in the city of Minneapolis to detect, locate, and alert MPD to gunfire in real-time. ShotSpotter reported that a single round was fired in front of XXX 24th Ave. N. at precisely 6:49:09 PM.

A separate report of the shooting came from a 911 caller who was inside the home at XXX 24th Ave. N. at the time of the gunshot. This individual, identified as Victim 3, reported that there were four adults and two children inside the home when an ICE agent shot into it. The adults in the residence referenced by Victim 3

were identified as Victims 1, 2, 3, and 4. Victim 3 explained that Victim 2 was chased to the home by ICE, and that, once Victim 2 got into the home, ICE shot at them. Victim 3 emphasized that ICE shot at all of them and hit Victim 1 in the leg. Victim 3 further reported to the 911 dispatcher that ICE remained outside the home and was trying to gain entry.

At approximately 6:50 PM, MPD officers and paramedics began responding to the scene, where they encountered numerous ICE agents surrounding the home. ICE agents deployed tear gas, entered the home, and took Victims 1, 2, 3, and 4 into custody. Almost an hour later, at 7:48 PM, paramedics were allowed access to Victim 1 and transported him to North Memorial Hospital, where he was treated for a gunshot wound to the leg.

While on the scene, MPD contacted the BCA, reported that an ICE agent was involved in a shooting, and requested the BCA's assistance with the investigation. BCA investigators deployed to the scene and to North Memorial Hospital.

Interview of ICE Agent 1

At the scene, BCA investigators encountered Federal Bureau of Investigation ("FBI") agents who agreed to conduct a joint investigation into the shooting, and, at 8:36 PM, personnel from the two agencies conducted a joint video-recorded interview with an ICE agent (hereinafter "ICE Agent 1").

ICE Agent 1 stated that he, Defendant, and two other agents (hereinafter "ICE Agent 2" and "ICE Agent 3") pursued Victim 2 for 7-10 minutes on the highways and streets of Minneapolis to XXX 24th Ave. N. ICE Agent 1 stated that the pursuit began after ICE "ran a background information on somebody and . . . made sure that the person was apprehendable." ICE Agent 1 stated that Defendant was the initial pursuer of the vehicle and that Defendant arrived at the victims' home before ICE Agent 1 arrived. ICE Agent 1 stated that the shooting occurred just before ICE Agent 1 arrived. Upon arrival, ICE Agent 1 said that he had a verbal exchange with Defendant. ICE Agent 1 described the exchange: "[Defendant] had told us that the two individuals came outside with the shovel and the broom had smacked him with it, got him on the ground, hit him with it, and of course, [Defendant] shot one round. He wasn't sure if he hit anybody. They had already shut the doors on us." ICE Agent 1 explained that the occupants of the home refused to exit, so ICE breached the house. ICE Agent 1 provided the names and cellphone numbers of ten ICE agents who were part of his team, and the list included the names of Defendant, ICE Agent 1, ICE Agent 2, and ICE Agent 3. ICE Agent 1 unambiguously identified Defendant as the shooter.

Soon after conducting the interview of ICE Agent 1, FBI agents at the scene informed the BCA that they had been directed to cease working with the BCA and that no further interviews would be conducted at the scene. At that point, federal authorities stymied all further efforts by the BCA to interview additional ICE agents or Defendant himself. To date, federal authorities have prevented any further interviews of involved federal agents.

Statement of Victim 1 and Documentation of Victim 1's Gunshot Wound

At 8:26 PM on January 14, 2026, BCA investigators arrived at North Memorial Hospital, where they spoke to Victim 1. Victim 1 explained that he lived at XXX 24th Ave. N. with Victims 2, 3, and 4, and two young children. Prior to the shooting, Victim 1 was at home and received a call from Victim 2. Victim 1 stated that Victim 2 reported to him that, while Victim 2 was working for DoorDash, he encountered ICE agents, who began pursuing him in an unmarked pickup truck. Victim 1 stated that, out of fear, Victim 2 did not stop his vehicle and attempted to evade the agents and get back to his home. Victim 1 stated that, as Victim 2 approached the home, Victim 1 exited the home and witnessed Victim 2's arrival. Victim 1 saw Victim 2 exit his vehicle and run toward the home, followed by a single ICE agent. Victim 1 saw the ICE agent catch

Victim 2 and struggle with Victim 2. Victim 1 intervened by pulling Victim 2 away from the agent, and Victim 2 broke free. The agent attempted to grab Victim 2 again. Victim 1 offered that, at that point, Victim 1 swung a broom at the agent, but Victim 1 did not strike the agent. Victim 1 and Victim 2 then ran into the home. Victim 1 stated that, as he stood inside the home, behind the front door, and while attempting to close and lock the door, Victim 1 heard a loud gunshot and was shot in his right leg. Victim 1 and Victim 2 then fled upstairs and attempted to barricade themselves inside the home, at which point ICE agents broke windows, deployed pepper spray inside the home, and took him and the other occupants of the home into custody.

While speaking to Victim 1 at the hospital, BCA investigators photographed an acute gunshot wound to Victim 1's right leg and obtained Victim 1's medical records. They observed and documented with a ruler that, in a standing position, Victim 1's gunshot wound was 32 inches from the ground.

Statement of Victim 2

BCA investigators spoke to Victim 2, who explained that, prior to the shooting, Victim 2 was delivering meals for DoorDash and observed a vehicle pull up next to him. Based on the appearances of the occupants of the other vehicle, Victim 2 surmised that they were associated with ICE. Those occupants pointed at Victim 2 from inside their vehicle and maneuvered their vehicle to try to block him. Victim 2 explained that he feared for his life, so he drove away. The ICE agents pursued Victim 2 for what he estimated to be 25 minutes. During the pursuit, Victim 2 called Victim 1 and decided to drive home. Once Victim 2 arrived on 24th Ave., Victim 2 exited his car and ran toward his house. ICE agents stopped behind Victim 2's vehicle, and one agent ran after him. At that point, Victim 2 saw Victim 1, Victim 3, and Victim 4 standing in the foyer inside the front door of the home.

Victim 2 stated that he slipped on the ice in front of his home, and the ICE agent tackled Victim 2, causing them both to fall to the ground. Victim 2 stated that he did not punch or assault the agent and that Victim 2 was just trying to get away from him. Victim 2 was able to break free, stand up, and grab a broom. Victim 2 held the broom briefly like a baseball bat facing the agent, but Victim 2 did not swing it and threw it down on the ground. Victim 2 and Victim 1 then ran into the home. Once inside, Victim 2 observed Victims 3 and 4 begin to run up the stairs and saw Victim 1 standing behind the front door, locking the door. At that moment, Victim 2 heard a single gunshot coming from outside the home and observed that Victim 1 was shot in the leg. The four victims then ran upstairs and barricaded themselves in a room. Soon after, ICE agents threw tear gas into the home, entered, and took everyone into custody.

Statement of Victim 4

BCA investigators spoke to Victim 4, who explained that, prior to the shooting, Victim 2 called to explain to Victims 1, 3, and 4 that ICE was chasing him and that he was coming home. In response, they called 911 and went down to the front of their home to wait for Victim 2 to arrive. Victim 2 arrived and ran toward the home, chased by a single ICE agent. Victim 4 saw that the ICE agent grabbed Victim 2, and Victim 1 went out to separate Victim 2 from the ICE agent. Victim 2 was able to get away from the ICE agent, and Victim 1 and Victim 2 ran back inside the home. At that moment, Victim 3 and Victim 4 were standing on the staircase within sight of the front door. Victim 1 was in the process of closing and locking the door when Victim 4 heard one gunshot. They all ran upstairs, and Victim 4 observed that Victim 1 was shot in the right leg. The victims immediately called 911 again and remained in the house until ICE shot tear gas into the house, breached the door, and arrested everyone.

Statement of Defendant at Cambridge Medical Center

BCA investigators learned that, on the night of the shooting, Defendant traveled by private vehicle to the

Cambridge Medical Center in Cambridge, MN, where at 8:44 PM Defendant underwent a medical examination, which included radiographic imaging. At that time, Defendant claimed that, while in the process of trying to detain a suspect, "other persons" came and started hitting Defendant with a broom and a snow shovel. Defendant claimed that these people were trying to hit him in the head, and that Defendant was hit twice in the head with the shovel, but that he did a "good job" of blocking the blows by covering his head.

While Defendant's account of events mirrored the account he provided to ICE Agent 1 at the scene, this account is not corroborated by the video of the incident or the accounts of Victims 1, 2, 3, or 4. Medical records document that Defendant suffered no demonstrable trauma to his body except for an abrasion to his left hand at the base of his thumb. The abrasion was cleaned off, and Defendant was discharged at 10:52 PM.

Collection and Review of Physical Evidence

Forensic scientists from the BCA responded to XXX 24th Ave. N to document the scene and collect physical evidence. They collected a shovel from the front yard, where the video from the city camera revealed Victim 1 had thrown it prior to Defendant arriving, a 9mm caliber discharged cartridge casing from the ground outside the front entrance of the home, a broom from the front step outside the entrance of the home, and another broom in the foyer. They observed a single bullet hole in the front door of the home. The hole was approximately 36.5 inches from the cement slab outside the residence and approximately 28 inches from the floor of the foyer inside the residence. Across the foyer from the front door, forensic scientists located additional defects in the residence that were consistent with a projectile passing through the front door, across the foyer, and then through the foyer wall, a closet, and a bedroom wall, where the projectile came to a rest. A single projectile was located inside the bedroom wall. The projectile was examined and determined to be consistent with being a jacketed hollow-point bullet fired by a 9mm caliber firearm. Utilizing physical and photographic evidence, forensic scientists conducted a trajectory analysis, finding that "the shot that fired the projectile originated outside of the duplex building, south of the front main door and traveled approximately south to north at a downward angle."

Defendant's Statement to FBI

BCA investigators learned that, following the incident, Defendant spoke to FBI agents about the incident. A summary of Defendant's statement to the FBI was included in an affidavit signed by an FBI agent on January 16, 2026. In the affidavit, Defendant (identified as ERO #1 therein) reported that he was driving an unmarked vehicle with another agent in his passenger seat. They observed a Ford Focus, ran its license plate through ICE databases, and concluded that the registered owner of the vehicle was not a United States citizen. Defendant attempted a traffic stop, but the vehicle fled. Defendant stated that he engaged in a high-speed pursuit of the vehicle with his lights and sirens activated for 15-20 minutes until the pursuit concluded with the vehicle's driver, Victim 2, coming to a stop on 24th Ave. N and running toward his home. Defendant stated that he exited his vehicle and chased Victim 2 on foot. Defendant stated that he saw a separate male, Victim 1, standing on the porch of the home and heard him yelling at Victim 2 to run faster. Victim 2 then slipped and fell on the ground, and Defendant grabbed Victim 2 to attempt to detain him.

According to the FBI affidavit, Defendant claimed to the FBI that, at that point, Victim 1 grabbed a broom and began striking him in the face and then a third male approached him with a snow shovel and began striking him with the shovel. Defendant claimed that, while being assaulted with a broom and a shovel by two assailants, he continued to tussle with Victim 2. According to the FBI affidavit, Defendant reported that he struggled with the three men "for about three minutes, was exhausted, alone, on the ground, and in fear of his safety." Victim 2 then freed himself and, according to Defendant, gave him an "angry scowl." Victim 1 then passed the broom to Victim 2, and, according to Defendant's account in the FBI affidavit, Victim 2

struck Defendant repeatedly in the face or head with the broom while Defendant was lying on his back on the ground. Defendant claimed that he tried blocking the blows with his left hand while drawing his service pistol with his right hand. He then pulled out his service pistol and pointed it in the direction of the three assailants. According to the FBI affidavit, Defendant claimed that, once Defendant pointed his pistol at the three assailants, they began running toward the front door of the home. Before they could enter the home, Defendant claimed, he fired one shot at them, unsure of whether he struck anyone. According to Defendant, after he fired the shot, the assailants ran inside and closed the front door.

Defendant's account to the FBI resembles his account to ICE Agent 1 and his account at the Cambridge Hospital. However, his account is contradicted by the video of the incident, the accounts of Victims 1, 2, 3, and 4, and the physical evidence.

Initiation and Abandonment of Federal Prosecution of Victim 1 and Victim 2

On January 16, 2026, the United States Attorney's Office for the District of Minnesota filed the FBI affidavit which summarized Defendant's claims in the United States District Court for the District of Minnesota in support of federal felony assault charges against Victim 1 and Victim 2. Following several court appearances in the criminal proceedings against Victim 1 and Victim 2, on February 11, 2026, United States Attorney Daniel N. Rosen moved to dismiss all charges against Victim 1 and Victim 2, acknowledging that "[n]ewly discovered evidence is materially inconsistent with the allegations in the Complaint Affidavit," and stating that "dismissal with prejudice will serve the interests of justice." On February 13, 2026, District Court Judge Paul A. Magnuson dismissed those charges against Victim 1 and Victim 2.

Further investigation revealed that, at the time of the shooting, Victim 1 and Victim 2 were residing in Minnesota lawfully, having been granted "Temporary Protected Status" by the United States Department of Homeland Security.

Statements of Victims to FBI

BCA investigators are aware that FBI agents spoke to multiple other witnesses to the shooting on January 14, 2026, and conducted separate interviews with Victims 1, 2, 3, and 4. The aforementioned FBI affidavit, which was filed on January 16, 2026, included summaries of the victims' statements to the FBI. To the extent that the content of the victims' statements can be gleaned from the affidavit, Victims 1, 2, 3, and 4 separately provided statements to the FBI which report that all of the victims were at the threshold of their home when Defendant attempted to apprehend Victim 2 but that they were inside the home behind the front door when Defendant shot at them through the door. As to the particulars of their statements, despite repeated and standing requests from the BCA, the federal authorities have refused to provide the BCA access to any record or report of the interviews and to all other evidence exclusively in the possession of the federal government.

A warrant for Defendant's arrest is necessary because his whereabouts are unknown and there is a substantial likelihood that Defendant will not respond to a summons.

## SIGNATURES AND APPROVALS

Complainant requests that Defendant, subject to bail or conditions of release, be:
(1) arrested or that other lawful steps be taken to obtain Defendant's appearance in court; or
(2) detained, if already in custody, pending further proceedings; and that said Defendant otherwise be dealt with according to law.

Complainant declares under penalty of perjury that everything stated in this document is true and correct. Minn. Stat. § 358.116; Minn. R. Crim. P. 2.01, subds. 1, 2.

| | | |
|---|---|---|
| **Complainant** | Nicolai Lyfoung<br>Special Agent<br>1430 Maryland Avenue E<br>St. Paul, MN 55106<br>Badge: 1456 | Electronically Signed:<br>05/18/2026 12:04 PM<br>Ramsey County, Minnesota |

Being authorized to prosecute the offenses charged, I approve this complaint.

| | | |
|---|---|---|
| **Prosecuting Attorney** | Joshua Larson<br>300 S 6th St<br>Minneapolis, MN 55487<br>(612) 348-5550 | Electronically Signed:<br>05/18/2026 12:00 PM |

## FINDING OF PROBABLE CAUSE

From the above sworn facts, and any supporting affidavits or supplemental sworn testimony, I, the Issuing Officer, have determined that probable cause exists to support, subject to bail or conditions of release where applicable, Defendant's arrest or other lawful steps be taken to obtain Defendant's appearance in court, or Defendant's detention, if already in custody, pending further proceedings. Defendant is therefore charged with the above-stated offense(s).

## ☐ SUMMONS

THEREFORE YOU, THE DEFENDANT, ARE SUMMONED to appear as directed in the Notice of Hearing before the above-named court to answer this complaint.

IF YOU FAIL TO APPEAR in response to this SUMMONS, a WARRANT FOR YOUR ARREST shall be issued.

## ☒ WARRANT

To the Sheriff of the above-named county; or other person authorized to execute this warrant: I order, in the name of the State of Minnesota, that the Defendant be apprehended and arrested without delay and brought promptly before the court (if in session), and if not, before a Judge or Judicial Officer of such court without unnecessary delay, and in any event not later than 36 hours after the arrest or as soon as such Judge or Judicial Officer is available to be dealt with according to law.

☐ ***Execute in MN Only*** ☒ ***Execute Nationwide*** ☐ ***Execute in Border States***

## ☐ ORDER OF DETENTION

Since the Defendant is already in custody, I order, subject to bail or conditions of release, that the Defendant continue to be detained pending further proceedings.

Bail: $200,000.00
Conditions of Release: No Contact with Witnesses; No Possession of Weapons; Make All Appearances; Remain Law Abiding; Surrender Passport

This complaint, duly subscribed and sworn to or signed under penalty of perjury, is issued by the undersigned Judicial Officer as of the following date: May 18, 2026.

**Judicial Officer** Paul R Scoggin
District Court Judge

Electronically Signed: 05/18/2026 12:17 PM

Sworn testimony has been given before the Judicial Officer by the following witnesses:

| | |
|---|---|
| **COUNTY OF HENNEPIN**<br>**STATE OF MINNESOTA**<br><br>**State of Minnesota**<br>Plaintiff<br>vs.<br>**Christian J. Castro**<br>Defendant | *LAW ENFORCEMENT OFFICER RETURN OF SERVICE*<br>*I hereby Certify and Return that I have served a copy of this Warrant upon the Defendant herein named.*<br>Signature of Authorized Service Agent: |

## DEFENDANT FACT SHEET

| | |
|---|---|
| **Name:** | Christian J. Castro |
| **DOB:** | [redacted]1973 |
| **Address:** | MN |
| **Alias Names/DOB:** | |
| **SID:** | |
| **Height:** | |
| **Weight:** | |
| **Eye Color:** | |
| **Hair Color:** | |
| **Gender:** | MALE |
| **Race:** | Unknown |
| **Fingerprints Required per Statute:** | Yes |
| **Fingerprint match to Criminal History Record:** | No |
| **Driver's License #:** | |
| **SILS Person ID #:** | 974462 |
| **SILS Tracking No.** | 3525561 |
| **Case Scheduling Information:** | RUSH WARRANT |
| **Alcohol Concentration:** | |

## STATUTE AND OFFENSE GRID

| Cnt Nbr | Statute Type | Offense Date(s) | Statute Nbrs and Descriptions | Offense Level | MOC | GOC | Controlling Agencies | Case Numbers |
|---|---|---|---|---|---|---|---|---|
| 1 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2323 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2323 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2323 | | MNBCA0000 | 26000126 |
| 2 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 3 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 4 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 5 | Charge | 1/14/2026 | 609.505.1 Falsely Reporting Crime | Misdemeanor | X3190 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.505.1 Falsely Reporting Crime | Misdemeanor | X3190 | | MNBCA0000 | 26000126 |

**609.222 ASSAULT IN THE SECOND DEGREE.**

Subdivision 1. **Dangerous weapon.** Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both.

Subd. 2. **Dangerous weapon; substantial bodily harm.** Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

**History:** *1979 c 258 s 5; 1984 c 628 art 3 s 11; 1985 c 53 s 1; 1989 c 290 art 6 s 9; 1992 c 571 art 4 s 7*

**609.11 MINIMUM SENTENCES OF IMPRISONMENT.**

Subdivision 1. **Commitments without minimums.** All commitments to the commissioner of corrections for imprisonment of the defendant are without minimum terms except when the sentence is to life imprisonment as required by law and except as otherwise provided in this chapter.

Subd. 2. [Repealed, 1978 c 723 art 2 s 5]

Subd. 3. [Repealed, 1981 c 227 s 13]

Subd. 4. **Dangerous weapon.** Any defendant convicted of an offense listed in subdivision 9 in which the defendant or an accomplice, at the time of the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections for not less than one year plus one day, nor more than the maximum sentence provided by law. Any defendant convicted of a second or subsequent offense in which the defendant or an accomplice, at the time of the offense, used a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections for not less than three years nor more than the maximum sentence provided by law.

Subd. 5. **Firearm.** (a) Except as otherwise provided in paragraph (b), any defendant convicted of an offense listed in subdivision 9 in which the defendant or an accomplice, at the time of the offense, had in possession or used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm, shall be committed to the commissioner of corrections for not less than three years, nor more than the maximum sentence provided by law. Any defendant convicted of a second or subsequent offense in which the defendant or an accomplice, at the time of the offense, had in possession or used a firearm shall be committed to the commissioner of corrections for not less than five years, nor more than the maximum sentence provided by law.

(b) Any defendant convicted of violating section 609.165 or 624.713, subdivision 1, clause (2), shall be committed to the commissioner of corrections for not less than five years, nor more than the maximum sentence provided by law.

Subd. 5a. **Drug offenses.** Notwithstanding section 609.035, whenever a defendant is subject to a mandatory minimum sentence for a felony violation of chapter 152, other than a violation of section 152.021, subdivision 2b, clause (1), or a violation of chapter 152 sentenced under section 152.021, subdivision 3, paragraph (c), and is also subject to this section, the minimum sentence imposed under this section shall be consecutive to that imposed under chapter 152.

Subd. 6. **No early release.** Any defendant convicted and sentenced as required by this section is not eligible for probation, parole, discharge, or supervised release until that person has served the full term of imprisonment as provided by law, notwithstanding the provisions of sections 242.19, 243.05, 244.04, 609.12 and 609.135.

Subd. 7. **Fact finder shall establish.** The question of whether the defendant or an accomplice, at the time of commission of an offense listed in subdivision 9, used a firearm or other dangerous weapon or had in possession a firearm shall be determined by the fact finder at the time of a verdict or finding of guilt at trial or the entry of a plea of guilty based upon the record of the trial or the plea of guilty. The fact finder shall also determine whether the defendant has been convicted of a second or subsequent offense in which the defendant or an accomplice, at the time of commission of an offense listed in subdivision 9, used a firearm or other dangerous weapon or had in possession a firearm.

Subd. 8. **Motion by prosecutor.** (a) Except as otherwise provided in paragraphs (b) and (c), prior to the time of sentencing, the prosecutor may file a motion to have the defendant sentenced without regard to the mandatory minimum sentences established by this section. The motion shall be accompanied by a statement on the record of the reasons for it. When presented with the motion, or on its own motion, the court may sentence the defendant without regard to the mandatory minimum sentences established by this section if the court finds substantial and compelling reasons to do so. A sentence imposed under this subdivision is a departure from the Sentencing Guidelines.

(b) The court may not, on its own motion or the prosecutor's motion, sentence a defendant without regard to the mandatory minimum sentences established by this section if the defendant previously has been convicted of an offense listed in subdivision 9 in which the defendant used or possessed a firearm or other dangerous weapon.

(c) The court may not, on its own motion or the prosecutor's motion, sentence a defendant without regard to the mandatory minimum sentences established by subdivision 5, if the defendant was convicted of a crime under section 152.021, subdivision 1, or 152.022, subdivision 1, and the person or an accomplice possessed on their person or within immediate reach, or used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm.

Subd. 9. **Applicable offenses.** The crimes for which mandatory minimum sentences shall be served as provided in this section are: murder in the first, second, or third degree; assault in the first, second, or third degree; burglary; kidnapping; false imprisonment; manslaughter in the first or second degree; aggravated robbery; simple robbery; carjacking in the first, second, or third degree; first-degree or aggravated first-degree witness tampering; criminal sexual conduct under the circumstances described in sections 609.342, subdivision 1, and subdivision 1a, clauses (a) to (f) and (i); 609.343, subdivision 1, and subdivision 1a, clauses (a) to (f) and (i); and 609.344, subdivision 1, clauses (a) to (c) and (d), under the conditions described in section 609.341, subdivision 24, clause (2), item (i), (ii), or (iii), and subdivision 1a, clauses (a) to (e), (h), and (i), under the conditions described in section 609.341, subdivision 24, clause (2), item (i), (ii), or (iii); escape from custody; arson in the first, second, or third degree; drive-by shooting under section 609.66, subdivision 1e; harassment under section 609.749, subdivision 3, paragraph (a), clause (3); possession or other unlawful use of a firearm or ammunition in violation of section 609.165, subdivision 1b, or 624.713, subdivision 1, clause (2), a felony violation of chapter 152; or any attempt to commit any of these offenses.

Subd. 10. **Report on criminal cases involving firearm.** Beginning on July 1, 1994, every county attorney shall collect and maintain the following information on criminal complaints and prosecutions within the county attorney's office in which the defendant is alleged to have committed an offense listed in subdivision 9 while possessing or using a firearm:

(1) whether the case was charged or dismissed;

(2) whether the defendant was convicted of the offense or a lesser offense; and

(3) whether the mandatory minimum sentence required under this section was imposed and executed or was waived by the prosecutor or court.

No later than July 1 of each year, beginning on July 1, 1995, the county attorney shall forward this information to the Sentencing Guidelines commission upon forms prescribed by the commission.

**History:** *1963 c 753 art 1 s 609.11; 1969 c 743 s 1; 1971 c 845 s 15; 1974 c 32 s 1; 1975 c 378 s 8; 1977 c 130 s 2; 1978 c 723 art 2 s 2; 1979 c 258 s 1; 1981 c 227 s 1-7; 1983 c 274 s 15; 1986 c 351 s 5; 1989 c 290 art 3 s 27,28; 1991 c 279 s 25; 1993 c 326 art 13 s 23; 1994 c 576 s 46; 1994 c 636 art 3 s 5-8;*

*1996 c 408 art 4 s 4,5; 1997 c 96 s 4; 1998 c 367 art 2 s 4,5; 2006 c 260 art 1 s 13; 2010 c 299 s 14; 2015 c 65 art 3 s 17; 2016 c 160 s 16,17; 2018 c 182 art 1 s 102; 1Sp2019 c 5 art 2 s 29; 1Sp2021 c 11 art 4 s 31; 2023 c 52 art 20 s 17*

**609.505 FALSELY REPORTING CRIME.**

Subdivision 1. **False reporting.** Whoever informs a law enforcement officer that a crime has been committed or otherwise provides information to an on-duty peace officer, knowing that the person is a peace officer, regarding the conduct of others, knowing that it is false and intending that the officer shall act in reliance upon it, is guilty of a misdemeanor. A person who is convicted a second or subsequent time under this section is guilty of a gross misdemeanor.

Subd. 2. **Reporting police misconduct.** (a) Whoever informs, or causes information to be communicated to, a peace officer, whose responsibilities include investigating or reporting police misconduct, that a peace officer, as defined in section 626.84, subdivision 1, paragraph (c), has committed an act of police misconduct, knowing that the information is false, is guilty of a crime and may be sentenced as follows:

(1) up to the maximum provided for a misdemeanor if the false information does not allege a criminal act; or

(2) up to the maximum provided for a gross misdemeanor if the false information alleges a criminal act.

(b) The court shall order any person convicted of a violation of this subdivision to make full restitution of all reasonable expenses incurred in the investigation of the false allegation unless the court makes a specific written finding that restitution would be inappropriate under the circumstances. A restitution award may not exceed $3,000.

**History:** *1963 c 753 art 1 s 609.505; 1971 c 23 s 52; 1993 c 326 art 4 s 26; 2005 c 136 art 17 s 30*

Alias names:
Christian Jeremiah Castro
Defendant failed to appear on:

Conditions of Release:

*27 CR 26 12537*

Warrant #: **27-CR-26-12537 - 1**
27-CR-26-12537
Court Division: 1
Community: Minneapolis

State of Minnesota vs.
**Christian J. Castro**
DOB: [redacted] **1973**
SID:
**MN**

**FELONY WARRANT**

The original Complaint has been duly signed and filed with the Hennepin County District Court.

Recommended bail: 200,000.00

| | | |
|---|---|---|
| 1; | F; | Assault-2nd Degree-Dangerous Weapon; Assault-2nd Degree-Dangerous Weapon; Assault-2nd Degree-Dangerous Weapon; Assault-2nd Degree-Dangerous Weapon |
| 2; | F; | |
| 3; | F; | |
| 4 | F | |

**WARRANT**

TO: The Sheriff or any Peace Officer of Hennepin County or other person authorized to execute this warrant.

IT IS HEREBY ORDERED, in the name of the State of Minnesota, that the defendant named in the complaint be apprehended and arrested without delay and brought before the Court to be dealt with according to law.

Witness the Honorable Judge of District Court this May 18, 2026.

Paul Scoggin
Judge of District Court

**NIGHTCAP**

You are commanded to arrest the defendant on Sunday, legal holiday, or in the night time.

Paul Scoggin
Judge of District Court

WARRANT TO BE EXECUTED NATIONWIDE
YES __X__ NO ____

STATE OF MINNESOTA, COUNTY OF HENNEPIN
I certify this to be a true and correct copy of the original on file and record in the Hennepin County Sheriff's Warrant Office.
Signed 5/29/2026 Dated
Central Records / Warrants

27-CR-26-12537

Filed in District Court
State of Minnesota
5/18/2026

State of Minnesota
County of Hennepin

District Court
4th Judicial District

Prosecutor File No. 26A05307
Court File No. 27-CR-26-12537

**State of Minnesota,**
Plaintiff,

vs.

**CHRISTIAN J. CASTRO DOB: [redacted]1973**

MN

Defendant.

**COMPLAINT**

Warrant

The Complainant submits this complaint to the Court and states that there is probable cause to believe Defendant committed the following offense(s):

**COUNT I**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 1 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT II**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 2 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT III**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000

Filed in District Court
State of Minnesota
5/18/2026

Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 3 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT IV**

**Charge: Assault-2nd Degree-Dangerous Weapon**
Minnesota Statute: 609.222.1, with reference to: 609.222.1, 609.11.5(a)
Maximum Sentence: 7 YEARS AND/OR $4,200-$14,000
Offense Level: Felony

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro, assaulted Victim 4 while using a firearm.
Minimum Sentence: 3 YEARS

**COUNT V**

**Charge: Falsely Reporting Crime**
Minnesota Statute: 609.505.1, with reference to: 609.505.1
Maximum Sentence: 90 DAYS AND/OR $1,000
Offense Level: Misdemeanor

Offense Date (on or about): 01/14/2026

Control #(ICR#): 26000126

Charge Description: That on or about January 14, 2026, in Minneapolis, Hennepin County, Minnesota, Christian J. Castro informed a law enforcement officer that a crime had been committed, or otherwise provided information to an on-duty peace officer regarding the conduct of others, knowing that such information was false and intended that the officer act in reliance upon it.

Filed in District Court
State of Minnesota
5/18/2026

27-CR-26-12537

## STATEMENT OF PROBABLE CAUSE

Complainant has investigated the facts and circumstances of this offense and believes the following establishes probable cause:

On January 14, 2026, at approximately 6:43:49 PM, the Minneapolis Police Department ("MPD") received a report from a 911 dispatcher that U.S. Immigration and Customs Enforcement ("ICE") agents were engaged in a vehicle pursuit of a male traveling in a Ford Focus and that the male, later identified as Victim 2, was attempting to reach his home, which was identified as XXX 24th Ave. N. in Minneapolis, Hennepin County, Minnesota. At 6:45 PM, MPD officers took remote-control of a city camera located at the intersection of Lyndale Ave. and 24th Ave. and pointed it at the home. The camera captured a series of events that culminated in an ICE agent, later identified as Christian Castro (hereinafter "Defendant"), firing a gunshot into the home, knowing it was occupied by multiple individuals, and injuring a male, later identified as Victim 1.

Video of Incident

The shooting of Victim 1 led to an investigation conducted by the Minnesota Bureau of Criminal Apprehension ("BCA"). As part of its investigation, the BCA recovered footage from the city camera at Lyndale and 24th, which captured the following events:

At 6:47 PM, Victim 1 stepped onto the front lawn of the home holding a snow shovel. At 6:48:36 PM, two vehicles arrived in the area and abruptly stopped approximately 100 feet east of the home. At 6:48:45 PM, Victim 2 emerged from the first vehicle and ran toward the home. Defendant emerged from the second vehicle and pursued Victim 2 on foot. At 6:48:50 PM, Victim 1 tossed the shovel onto the ground, where it remained throughout the incident, and stepped back toward the front door of the home. At 6:48:52 PM, Victim 2 reached the front of the home but slipped on the ground before he could reach the front door. At 6:48:55 PM, Defendant caught up to Victim 2, jumped on top of Victim 2, and engaged in a brief struggle with Victim 2 on the ground in front of the home. At 6:48:57 PM, Defendant rolled off Victim 2 and onto the ground while Defendant continued efforts to grasp onto Victim 2. At 6:49:01 PM, Victim 1 approached Victim 2 and reached down, appearing to separate Victim 2 from Defendant and help Victim 2 off the ground. At 6:49:04 PM, Victim 1 and Victim 2 ran to the front door of the home, out of camera-view at 6:49:06 PM. At 6:49:08 PM, Defendant got off the ground and stood several feet from the front door of the home, just as additional ICE vehicles were arriving on 24th Ave. approximately 100 feet east of the home. At 6:49:09 PM, as Defendant faced the front door of the home, Defendant raised both of his arms straight out in front of him, pointing toward the front door. Defendant's movements between 6:49:09 PM and 6:49:10 PM are consistent with Defendant firing a gun at the front door of the home. Defendant then stepped back and spoke to an arriving ICE agent.

Reports of Shooting, Statement of Victim 3, and Immediate Scene Response

Immediately after this incident, MPD received multiple reports of a single gunshot occurring in front of XXX 24th Ave. N. One of those reports was from "ShotSpotter," an acoustic gunshot detection system which utilizes a network of sensors installed in the city of Minneapolis to detect, locate, and alert MPD to gunfire in real-time. ShotSpotter reported that a single round was fired in front of XXX 24th Ave. N. at precisely 6:49:09 PM.

A separate report of the shooting came from a 911 caller who was inside the home at XXX 24th Ave. N. at the time of the gunshot. This individual, identified as Victim 3, reported that there were four adults and two children inside the home when an ICE agent shot into it. The adults in the residence referenced by Victim 3

were identified as Victims 1, 2, 3, and 4. Victim 3 explained that Victim 2 was chased to the home by ICE and that, once Victim 2 got into the home, ICE shot at them. Victim 3 emphasized that ICE shot at all of them and hit Victim 1 in the leg. Victim 3 further reported to the 911 dispatcher that ICE remained outside the home and was trying to gain entry.

At approximately 6:50 PM, MPD officers and paramedics began responding to the scene, where they encountered numerous ICE agents surrounding the home. ICE agents deployed tear gas, entered the home, and took Victims 1, 2, 3, and 4 into custody. Almost an hour later, at 7:48 PM, paramedics were allowed access to Victim 1 and transported him to North Memorial Hospital, where he was treated for a gunshot wound to the leg.

While on the scene, MPD contacted the BCA, reported that an ICE agent was involved in a shooting, and requested the BCA's assistance with the investigation. BCA investigators deployed to the scene and to North Memorial Hospital.

Interview of ICE Agent 1

At the scene, BCA investigators encountered Federal Bureau of Investigation ("FBI") agents who agreed to conduct a joint investigation into the shooting, and, at 8:36 PM, personnel from the two agencies conducted a joint video-recorded interview with an ICE agent (hereinafter "ICE Agent 1").

ICE Agent 1 stated that he, Defendant, and two other agents (hereinafter "ICE Agent 2" and "ICE Agent 3") pursued Victim 2 for 7-10 minutes on the highways and streets of Minneapolis to XXX 24th Ave. N. ICE Agent 1 stated that the pursuit began after ICE "ran a background information on somebody and . . . made sure that the person was apprehendable." ICE Agent 1 stated that Defendant was the initial pursuer of the vehicle and that Defendant arrived at the victims' home before ICE Agent 1 arrived. ICE Agent 1 stated that the shooting occurred just before ICE Agent 1 arrived. Upon arrival, ICE Agent 1 said that he had a verbal exchange with Defendant. ICE Agent 1 described the exchange: "[Defendant] had told us that the two individuals came outside with the shovel and the broom had smacked him with it, got him on the ground, hit him with it, and of course, [Defendant] shot one round. He wasn't sure if he hit anybody. They had already shut the doors on us." ICE Agent 1 explained that the occupants of the home refused to exit, so ICE breached the house. ICE Agent 1 provided the names and cellphone numbers of ten ICE agents who were part of his team, and the list included the names of Defendant, ICE Agent 1, ICE Agent 2, and ICE Agent 3. ICE Agent 1 unambiguously identified Defendant as the shooter.

Soon after conducting the interview of ICE Agent 1, FBI agents at the scene informed the BCA that they had been directed to cease working with the BCA and that no further interviews would be conducted at the scene. At that point, federal authorities stymied all further efforts by the BCA to interview additional ICE agents or Defendant himself. To date, federal authorities have prevented any further interviews of involved federal agents.

Statement of Victim 1 and Documentation of Victim 1's Gunshot Wound

At 8:26 PM on January 14, 2026, BCA investigators arrived at North Memorial Hospital, where they spoke to Victim 1. Victim 1 explained that he lived at XXX 24th Ave. N. with Victims 2, 3, and 4, and two young children. Prior to the shooting, Victim 1 was at home and received a call from Victim 2. Victim 1 stated that Victim 2 reported to him that, while Victim 2 was working for DoorDash, he encountered ICE agents, who began pursuing him in an unmarked pickup truck. Victim 1 stated that, out of fear, Victim 2 did not stop his vehicle and attempted to evade the agents and get back to his home. Victim 1 stated that, as Victim 2 approached the home, Victim 1 exited the home and witnessed Victim 2's arrival. Victim 1 saw Victim 2 exit his vehicle and run toward the home, followed by a single ICE agent. Victim 1 saw the ICE agent catch

Filed in District Court
State of Minnesota
5/18/2026

Victim 2 and struggle with Victim 2. Victim 1 intervened by pulling Victim 2 away from the agent, and Victim 2 broke free. The agent attempted to grab Victim 2 again. Victim 1 offered that, at that point, Victim 1 swung a broom at the agent, but Victim 1 did not strike the agent. Victim 1 and Victim 2 then ran into the home. Victim 1 stated that, as he stood inside the home, behind the front door, and while attempting to close and lock the door, Victim 1 heard a loud gunshot and was shot in his right leg. Victim 1 and Victim 2 then fled upstairs and attempted to barricade themselves inside the home, at which point ICE agents broke windows, deployed pepper spray inside the home, and took him and the other occupants of the home into custody.

While speaking to Victim 1 at the hospital, BCA investigators photographed an acute gunshot wound to Victim 1's right leg and obtained Victim 1's medical records. They observed and documented with a ruler that, in a standing position, Victim 1's gunshot wound was 32 inches from the ground.

Statement of Victim 2

BCA investigators spoke to Victim 2, who explained that, prior to the shooting, Victim 2 was delivering meals for DoorDash and observed a vehicle pull up next to him. Based on the appearances of the occupants of the other vehicle, Victim 2 surmised that they were associated with ICE. Those occupants pointed at Victim 2 from inside their vehicle and maneuvered their vehicle to try to block him. Victim 2 explained that he feared for his life, so he drove away. The ICE agents pursued Victim 2 for what he estimated to be 25 minutes. During the pursuit, Victim 2 called Victim 1 and decided to drive home. Once Victim 2 arrived on 24th Ave., Victim 2 exited his car and ran toward his house. ICE agents stopped behind Victim 2's vehicle, and one agent ran after him. At that point, Victim 2 saw Victim 1, Victim 3, and Victim 4 standing in the foyer inside the front door of the home.

Victim 2 stated that he slipped on the ice in front of his home, and the ICE agent tackled Victim 2, causing them both to fall to the ground. Victim 2 stated that he did not punch or assault the agent and that Victim 2 was just trying to get away from him. Victim 2 was able to break free, stand up, and grab a broom. Victim 2 held the broom briefly like a baseball bat facing the agent, but Victim 2 did not swing it and threw it down on the ground. Victim 2 and Victim 1 then ran into the home. Once inside, Victim 2 observed Victims 3 and 4 begin to run up the stairs and saw Victim 1 standing behind the front door, locking the door. At that moment, Victim 2 heard a single gunshot coming from outside the home and observed that Victim 1 was shot in the leg. The four victims then ran upstairs and barricaded themselves in a room. Soon after, ICE agents threw tear gas into the home, entered, and took everyone into custody.

Statement of Victim 4

BCA investigators spoke to Victim 4, who explained that, prior to the shooting, Victim 2 called to explain to Victims 1, 3, and 4 that ICE was chasing him and that he was coming home. In response, they called 911 and went down to the front of their home to wait for Victim 2 to arrive. Victim 2 arrived and ran toward the home, chased by a single ICE agent. Victim 4 saw that the ICE agent grabbed Victim 2, and Victim 1 went out to separate Victim 2 from the ICE agent. Victim 2 was able to get away from the ICE agent, and Victim 1 and Victim 2 ran back inside the home. At that moment, Victim 3 and Victim 4 were standing on the staircase within sight of the front door. Victim 1 was in the process of closing and locking the door when Victim 4 heard one gunshot. They all ran upstairs, and Victim 4 observed that Victim 1 was shot in the right leg. The victims immediately called 911 again and remained in the house until ICE shot tear gas into the house, breached the door, and arrested everyone.

Statement of Defendant at Cambridge Medical Center

BCA investigators learned that, on the night of the shooting, Defendant traveled by private vehicle to the

Cambridge Medical Center in Cambridge, MN, where at 8:44 PM Defendant underwent a medical examination, which included radiographic imaging. At that time, Defendant claimed that, while in the process of trying to detain a suspect, "other persons" came and started hitting Defendant with a broom and a snow shovel. Defendant claimed that these people were trying to hit him in the head, and that Defendant was hit twice in the head with the shovel, but that he did a "good job" of blocking the blows by covering his head.

While Defendant's account of events mirrored the account he provided to ICE Agent 1 at the scene, this account is not corroborated by the video of the incident or the accounts of Victims 1, 2, 3, or 4. Medical records document that Defendant suffered no demonstrable trauma to his body except for an abrasion to his left hand at the base of his thumb. The abrasion was cleaned off, and Defendant was discharged at 10:52 PM.

Collection and Review of Physical Evidence

Forensic scientists from the BCA responded to XXX 24th Ave. N to document the scene and collect physical evidence. They collected a shovel from the front yard, where the video from the city camera revealed Victim 1 had thrown it prior to Defendant arriving, a 9mm caliber discharged cartridge casing from the ground outside the front entrance of the home, a broom from the front step outside the entrance of the home, and another broom in the foyer. They observed a single bullet hole in the front door of the home. The hole was approximately 36.5 inches from the cement slab outside the residence and approximately 28 inches from the floor of the foyer inside the residence. Across the foyer from the front door, forensic scientists located additional defects in the residence that were consistent with a projectile passing through the front door, across the foyer, and then through the foyer wall, a closet, and a bedroom wall, where the projectile came to a rest. A single projectile was located inside the bedroom wall. The projectile was examined and determined to be consistent with being a jacketed hollow-point bullet fired by a 9mm caliber firearm. Utilizing physical and photographic evidence, forensic scientists conducted a trajectory analysis, finding that "the shot that fired the projectile originated outside of the duplex building, south of the front main door and traveled approximately south to north at a downward angle."

Defendant's Statement to FBI

BCA investigators learned that, following the incident, Defendant spoke to FBI agents about the incident. A summary of Defendant's statement to the FBI was included in an affidavit signed by an FBI agent on January 16, 2026. In the affidavit, Defendant (identified as ERO #1 therein) reported that he was driving an unmarked vehicle with another agent in his passenger seat. They observed a Ford Focus, ran its license plate through ICE databases, and concluded that the registered owner of the vehicle was not a United States citizen. Defendant attempted a traffic stop, but the vehicle fled. Defendant stated that he engaged in a high-speed pursuit of the vehicle with his lights and sirens activated for 15-20 minutes until the pursuit concluded with the vehicle's driver, Victim 2, coming to a stop on 24th Ave. N and running toward his home. Defendant stated that he exited his vehicle and chased Victim 2 on foot. Defendant stated that he saw a separate male, Victim 1, standing on the porch of the home and heard him yelling at Victim 2 to run faster. Victim 2 then slipped and fell on the ground, and Defendant grabbed Victim 2 to attempt to detain him.

According to the FBI affidavit, Defendant claimed to the FBI that, at that point, Victim 1 grabbed a broom and began striking him in the face and then a third male approached him with a snow shovel and began striking him with the shovel. Defendant claimed that, while being assaulted with a broom and a shovel by two assailants, he continued to tussle with Victim 2. According to the FBI affidavit, Defendant reported that he struggled with the three men "for about three minutes, was exhausted, alone, on the ground, and in fear of his safety." Victim 2 then freed himself and, according to Defendant, gave him an "angry scowl." Victim 1 then passed the broom to Victim 2, and, according to Defendant's account in the FBI affidavit, Victim 2

struck Defendant repeatedly in the face or head with the broom while Defendant was lying on his back on the ground. Defendant claimed that he tried blocking the blows with his left hand while drawing his service pistol with his right hand. He then pulled out his service pistol and pointed it in the direction of the three assailants. According to the FBI affidavit, Defendant claimed that, once Defendant pointed his pistol at the three assailants, they began running toward the front door of the home. Before they could enter the home, Defendant claimed, he fired one shot at them, unsure of whether he struck anyone. According to Defendant, after he fired the shot, the assailants ran inside and closed the front door.

Defendant's account to the FBI resembles his account to ICE Agent 1 and his account at the Cambridge Hospital. However, his account is contradicted by the video of the incident, the accounts of Victims 1, 2, 3, and 4, and the physical evidence.

Initiation and Abandonment of Federal Prosecution of Victim 1 and Victim 2

On January 16, 2026, the United States Attorney's Office for the District of Minnesota filed the FBI affidavit which summarized Defendant's claims in the United States District Court for the District of Minnesota in support of federal felony assault charges against Victim 1 and Victim 2. Following several court appearances in the criminal proceedings against Victim 1 and Victim 2, on February 11, 2026, United States Attorney Daniel N. Rosen moved to dismiss all charges against Victim 1 and Victim 2, acknowledging that "[n]ewly discovered evidence is materially inconsistent with the allegations in the Complaint Affidavit," and stating that "dismissal with prejudice will serve the interests of justice." On February 13, 2026, District Court Judge Paul A. Magnuson dismissed those charges against Victim 1 and Victim 2.

Further investigation revealed that, at the time of the shooting, Victim 1 and Victim 2 were residing in Minnesota lawfully, having been granted "Temporary Protected Status" by the United States Department of Homeland Security.

Statements of Victims to FBI

BCA investigators are aware that FBI agents spoke to multiple other witnesses to the shooting on January 14, 2026, and conducted separate interviews with Victims 1, 2, 3, and 4. The aforementioned FBI affidavit, which was filed on January 16, 2026, included summaries of the victims' statements to the FBI. To the extent that the content of the victims' statements can be gleaned from the affidavit, Victims 1, 2, 3, and 4 separately provided statements to the FBI which report that all of the victims were at the threshold of their home when Defendant attempted to apprehend Victim 2 but that they were inside the home behind the front door when Defendant shot at them through the door. As to the particulars of their statements, despite repeated and standing requests from the BCA, the federal authorities have refused to provide the BCA access to any record or report of the interviews and to all other evidence exclusively in the possession of the federal government.

A warrant for Defendant's arrest is necessary because his whereabouts are unknown and there is a substantial likelihood that Defendant will not respond to a summons.

27-CR-26-12537

Filed in District Court
State of Minnesota
5/18/2026

## SIGNATURES AND APPROVALS

Complainant requests that Defendant, subject to bail or conditions of release, be:
(1) arrested or that other lawful steps be taken to obtain Defendant's appearance in court; or
(2) detained, if already in custody, pending further proceedings; and that said Defendant otherwise be dealt with according to law.

Complainant declares under penalty of perjury that everything stated in this document is true and correct. Minn. Stat. § 358.116; Minn. R. Crim. P. 2.01, subds. 1, 2.

| | | |
|---|---|---|
| **Complainant** | Nicolai Lyfoung<br>Special Agent<br>1430 Maryland Avenue E<br>St. Paul, MN 55106<br>Badge: 1456 | Electronically Signed:<br>05/18/2026 12:04 PM<br>Ramsey County, Minnesota |

Being authorized to prosecute the offenses charged, I approve this complaint.

| | | |
|---|---|---|
| **Prosecuting Attorney** | Joshua Larson<br>300 S 6th St<br>Minneapolis, MN 55487<br>(612) 348-5550 | Electronically Signed:<br>05/18/2026 12:00 PM |

27-CR-26-12537

Filed in District Court
State of Minnesota
5/18/2026

## FINDING OF PROBABLE CAUSE

From the above sworn facts, and any supporting affidavits or supplemental sworn testimony, I, the Issuing Officer, have determined that probable cause exists to support, subject to bail or conditions of release where applicable, Defendant's arrest or other lawful steps be taken to obtain Defendant's appearance in court, or Defendant's detention, if already in custody, pending further proceedings. Defendant is therefore charged with the above-stated offense(s).

## ☐ SUMMONS

THEREFORE YOU, THE DEFENDANT, ARE SUMMONED to appear as directed in the Notice of Hearing before the above-named court to answer this complaint.

IF YOU FAIL TO APPEAR in response to this SUMMONS, a WARRANT FOR YOUR ARREST shall be issued.

## ☒ WARRANT

To the Sheriff of the above-named county; or other person authorized to execute this warrant: I order, in the name of the State of Minnesota, that the Defendant be apprehended and arrested without delay and brought promptly before the court (if in session), and if not, before a Judge or Judicial Officer of such court without unnecessary delay, and in any event not later than 36 hours after the arrest or as soon as such Judge or Judicial Officer is available to be dealt with according to law.

☐ ***Execute in MN Only*** ☒ ***Execute Nationwide*** ☐ ***Execute in Border States***

## ☐ ORDER OF DETENTION

Since the Defendant is already in custody, I order, subject to bail or conditions of release, that the Defendant continue to be detained pending further proceedings.

Bail: $200,000.00
Conditions of Release: No Contact with Witnesses; No Possession of Weapons; Make All Appearances; Remain Law Abiding; Surrender Passport

This complaint, duly subscribed and sworn to or signed under penalty of perjury, is issued by the undersigned Judicial Officer as of the following date: May 18, 2026.

**Judicial Officer** Paul R Scoggin
District Court Judge

Electronically Signed: 05/18/2026 12:17 PM

Sworn testimony has been given before the Judicial Officer by the following witnesses:

| | |
|---|---|
| **COUNTY OF HENNEPIN**<br>**STATE OF MINNESOTA**<br><br>**State of Minnesota**<br>Plaintiff<br>vs.<br>**Christian J. Castro**<br>Defendant | *LAW ENFORCEMENT OFFICER RETURN OF SERVICE*<br>*I hereby Certify and Return that I have served a copy of this Warrant upon the Defendant herein named.*<br>Signature of Authorized Service Agent: |

27-CR-26-12537

Filed in District Court
State of Minnesota
5/18/2026

# DEFENDANT FACT SHEET

| | |
|---|---|
| **Name:** | Christian J. Castro |
| **DOB:** | [redacted]1973 |
| **Address:** | MN |
| **Alias Names/DOB:** | |
| **SID:** | |
| **Height:** | |
| **Weight:** | |
| **Eye Color:** | |
| **Hair Color:** | |
| **Gender:** | MALE |
| **Race:** | Unknown |
| **Fingerprints Required per Statute:** | Yes |
| **Fingerprint match to Criminal History Record:** | No |
| **Driver's License #:** | |
| **SILS Person ID #:** | 974462 |
| **SILS Tracking No.** | 3525561 |
| **Case Scheduling Information:** | RUSH WARRANT |
| **Alcohol Concentration:** | |

27-CR-26-12537

Filed in District Court
State of Minnesota
5/18/2026

## STATUTE AND OFFENSE GRID

| Cnt Nbr | Statute Type | Offense Date(s) | Statute Nbrs and Descriptions | Offense Level | MOC | GOC | Controlling Agencies | Case Numbers |
|---|---|---|---|---|---|---|---|---|
| 1 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2323 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2323 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2323 | | MNBCA0000 | 26000126 |
| 2 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 3 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 4 | Charge | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.11.5(a) Minimum Sentences of Imprisonment-Firearm Use or Possession | Felony | A2423 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.222.1 Assault-2nd Degree-Dangerous Weapon | Felony | A2423 | | MNBCA0000 | 26000126 |
| 5 | Charge | 1/14/2026 | 609.505.1 Falsely Reporting Crime | Misdemeanor | X3190 | | MNBCA0000 | 26000126 |
| | Penalty | 1/14/2026 | 609.505.1 Falsely Reporting Crime | Misdemeanor | X3190 | | MNBCA0000 | 26000126 |