**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

STATE OF MINNESOTA, *ex rel. Governor Tim Walz and Attorney General Keith Ellison*,

Plaintiff,

v.

GREG ABBOTT*, in his official capacity as Governor of the State of Texas,* and

MANUEL TREVINO, *in his official capacity as Sheriff of Cameron County, Texas,*

Defendants.

Case No.: 1:26-cv-00906

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER

Plaintiff State of Minnesota, on behalf of Governor Tim Walz and Attorney General Keith Ellison, moves this Court to issue a temporary restraining order (TRO) to compel Defendant Texas Governor Greg Abbott to fulfill his mandatory ministerial duty to execute a governor's rendition warrant to extradite Christian Castro—a defendant who is charged with four counts of felony second-degree assault and one misdemeanor count of falsely reporting a crime in Hennepin County, Minnesota—back to Minnesota for prosecution. Governor Abbott's continued unlawful withholding of the rendition warrant constitutes an extraordinary departure from basic principles of interstate comity. Absent immediate emergency relief from this Court, Governor Abbott's continued dereliction of

his duty threatens to irreparably harm Minnesota in its sovereign right to enforce its criminal laws by obtaining the extradition of a fugitive who is charged with committing crimes within Minnesota's borders.

On May 29, 2026, Castro was arrested in Texas on a nationwide warrant issued by a judge in Minnesota. The Office of Minnesota Governor Tim Walz promptly sent Governor Abbott's office a request for Castro's extradition. Under the Extradition Clause, the Federal Extradition Act, and Texas law, this request triggered a mandatory obligation for Governor Abbott to swiftly issue a governor's rendition warrant to Defendant Cameron County Sheriff Manuel Trevino to effectuate Castro's transfer back to the State of Minnesota for prosecution. Instead of promptly fulfilling his ministerial duty to execute a governor's rendition warrant for Castro, as he has done routinely in response to extradition requests throughout his term in office, Governor Abbott has withheld the rendition warrant and held up Castro's extradition for nearly three months.

The Framers of the Constitution and Congress intended the interstate extradition process to be a swift, summary one in which the state into which a defendant travels promptly returns a fugitive as soon as the requesting state demands it. *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987). Governor Abbott has a mandatory ministerial obligation to issue a governor's rendition warrant for Castro, and he is afforded no discretion to decline to do so. *Id.* As a result of this clear constitutional and statutory directive, the State of Minnesota is likely to succeed on the merits of its lawsuit.

Governor Abbott's continued withholding of the rendition warrant for Castro threatens imminent irreparable harm to Minnesota's constitutional and statutory rights to

have Castro returned to Minnesota for prosecution. This threat is heightened by the State of Texas's 90-day limitation on the detention of fugitives awaiting extradition. Under the Texas Code of Criminal Procedure, if Governor Abbott continues to unlawfully withhold the rendition warrant, Castro may be eligible for release from custody as soon as August 26, 2026. If Castro is released, the risk that he may flee and avoid prosecution is real—Castro would be released close to the Mexican border. If the Court does not provide emergency relief, Governor Abbott's continued unlawful withholding of the rendition warrant may result in Minnesota permanently losing its ability to return Castro to Minnesota for prosecution.

Accordingly, Plaintiff moves the Court for a TRO: (1) ordering Governor Abbott to execute a rendition warrant for Castro's extradition immediately and (2) enjoining Sheriff Trevino from releasing Castro from custody until Governor Abbott has executed a rendition warrant and Castro is turned over to agents of the State of Minnesota for extradition.

## FACTUAL BACKGROUND

### I. The Minnesota Charges and the Texas Arrest

On May 18, 2026, Christian Castro was charged in Hennepin County, Minnesota, with four felony counts of second-degree assault with a dangerous weapon and one misdemeanor count of falsely reporting a crime, in violation of Minnesota law. Johnson Decl., Ex. A, 17-27. The complaint was accompanied by the affidavit of a Special Agent of the Minnesota Bureau of Criminal Apprehension ("BCA") setting forth facts underlying each of the five charged offenses. *Id.* at Ex. A, 19-24. In summary, the

complaint alleged that on January 14, 2026, Castro was employed as an agent of U.S. Immigration and Customs Enforcement ("ICE") when he fired a gun at the front door of a home in Minneapolis, Minnesota, knowing that the home was occupied by multiple people, and that Castro's gunshot struck and injured a person inside the home. *Id.* at Ex. A, 19-23. The complaint further alleged that Castro intentionally misrepresented the circumstances surrounding the shooting.[1] *Id.*

The complaint was signed by the BCA Special Agent, by an Assistant Hennepin County Attorney, and by a Hennepin County District Court Judge, who determined that the sworn affidavit established probable cause to support Castro's charging and arrest. *Id.* at Ex. A, 24-25. At the time the complaint was issued, Castro's whereabouts were unknown. *Id.* at Ex. A, 23. That same day, the Hennepin County District Court Judge issued a nationwide warrant for Castro's arrest. *Id.* at Ex. A, 25.

Soon after January 14, 2026, Castro left Minnesota and traveled to Texas. On May 29, 2026, Texas law enforcement officers found and arrested Castro pursuant to the nationwide warrant. *Id.* at Ex. A, 8. Castro was booked into jail in Cameron County. *Id.*

---

[1] As a result of Castro's false statements regarding the circumstances of the shooting, the U.S. Attorney's Office for the District of Minnesota charged two of Castro's assault victims with assaulting Castro, in violation of 18 U.S.C. §111(a)(1). 26-mj-23-PAM-DLM, Doc. 1 (Complaint) (D. Minn. Jan. 16, 2026). On February 12, 2026, the U.S. Attorney's Office filed a motion to dismiss the criminal complaint against the two victims with prejudice, citing "[n]ewly discovered evidence" that was "materially inconsistent with the allegations in the Complaint Affidavit . . . as well as the preliminary-hearing testimony[.]" 26-mj-23-PAM-DLM, Doc. 48 (Government's Motion to Dismiss Complaint with Prejudice) (D. Minn. Feb. 12, 2026).

## II. Governor Abbott's Withholding of a Rendition Warrant to Extradite Castro

On June 2, 2026, Minnesota Governor Tim Walz executed a governor's requisition warrant for Castro. Johnson Decl., Ex. A. Governor Walz's office sent the governor's requisition warrant and supporting documentation to the Office of Governor Abbott and requested that Governor Abbott issue a governor's rendition warrant, forward the rendition warrant to Sheriff Trevino, and direct Sheriff Trevino to notify the Hennepin County Sheriff's Office in Minnesota when Castro was available for release. *Id.* at Ex. A, 1. Governor Abbott's office received Governor Walz's requisition warrant and supporting documentation on June 3, 2026. *Id.* at Ex. B.

On June 4, 2026, Castro appeared before a judge in Cameron County, Texas. At the hearing, the judge advised Castro of the offenses with which he was charged in Minnesota and of his right to counsel, his right to petition for a writ of habeas corpus, and his right to either waive or refuse to waive extradition proceedings. *Id.* at Ex. C. Castro declined to waive extradition proceedings. *Id.* The judge ordered Castro to be committed to jail pending extradition. *Id.*

After sending the governor's requisition warrant and supporting documentation to Texas, officials with the Office of Minnesota Governor Tim Walz and the Hennepin County Attorney's Office were initially in regular communication with extradition officials in the Office of Governor Abbott. *Id.* at ¶ 7. On June 23, 2026, Governor Abbott's State Extradition Coordinator informed Governor Walz's staff that she was hoping to have the signed paperwork for Castro's extradition back by the next day. *Id.* at Ex. D. This timing would have adhered to historical practice, under which Governor

Abbott has signed governor's rendition warrants in response to Minnesota's requests for extradition in an average of less than 30 days. *Id.* at ¶ 18.

But Governor Abbott did not sign the governor's rendition warrant for Castro the next day. Instead, a week later, on June 30, 2026, the State Extradition Coordinator instructed Governor Walz's office to direct its communications to a new point of contact—Governor Abbott's Deputy General Counsel—and reported that Castro's extradition paperwork was on the Deputy General Counsel's desk. *Id.* at Ex. D.

On the same day, June 30, 2026, and again on July 1, 2026, Governor Abbott signed rendition warrants to extradite two other defendants in unrelated cases to Minnesota. *Id.* at Exs. E & F. Governor Walz's office sent the governor's requisition warrants and supporting documentation to Governor Abbott's office for the two other defendants on May 21, 2026, shortly before sending the governor's requisition warrant for Castro. *Id.* at ¶¶ 9 & 10.

Throughout July 2026, officials in Governor Walz's office made repeated efforts to communicate with Governor Abbott's office about the rendition warrant for Castro. Governor Abbott's Deputy General counsel repeatedly told them that he had no updates to provide and would provide an update when one was available. *Id.* at Ex. G. Four more weeks have passed, and Governor Abbott's office has not provided any updates. *Id.* at ¶ 12.

On July 30, 2026, Hennepin County Attorney Mary Moriarty sent a letter to Governor Abbott requesting that he review and sign Castro's extradition paperwork. *Id.* at Ex. H. Governor Abbott did not respond to the Hennepin County Attorney's letter.

On August 5, 2026, Governor Abbott signed a governor's rendition warrant to extradite a third defendant in another unrelated case to Minnesota. *Id.* at Ex. I. Governor Walz's office sent the governor's requisition warrant and supporting documentation for this third defendant to Governor Abbott's office on June 24, 2026, while the request for Castro's extradition was pending.

On August 13, 2026, Minnesota Attorney General Keith Ellison sent a letter to Governor Abbott setting forth Governor Abbott's legal duty to extradite Castro to Minnesota and providing Governor Abbott with notice that if he did not execute a rendition warrant by 5:00 p.m. on Monday, August 17, then Minnesota would be forced to bring a lawsuit to protect its right to prosecute a person charged with committing crimes within its borders. *Id.* at Ex. J.

To date, Governor Abbott has not responded, and he has continued to withhold the governor's rendition warrant that would effectuate Castro's extradition to Minnesota. *Id.* at ¶ 16.

## III. Texas and Minnesota's History of Prompt Extraditions to Each Other in Compliance with the Constitution and with Federal and State Law

Governor Abbott's failure to issue a rendition warrant in response to Minnesota's request for Castro's extradition is unusual and inconsistent with longstanding historical practice. Minnesota and Texas often request extradition of fugitives from each other. During the last five years, the State of Minnesota has sought extradition from the State of Texas of approximately 11 individuals charged with crimes in Minnesota. Johnson Decl., ¶ 18. Governor Abbott signed governor's rendition warrants in response to each of

Governor Walz's requisition warrants in an average of fewer than 30 days from when Minnesota sent its requests. *Id.* These included an extradition request for an individual charged with second degree assault—the same crime with which Castro is charged—for which Governor Abbott signed a rendition warrant 17 days after the State of Minnesota sent its requisition warrant. *Id.* at ¶ 18.

During the same time, Governor Walz has also promptly executed governor's rendition warrants in response to extradition requests from the State of Texas. Over the last five years, the State of Texas has sought extradition from the State of Minnesota of approximately 21 individuals charged with crimes in Texas. *Id.* at ¶ 19. Governor Walz signed rendition warrants in response to each of Governor Abbott's requisition warrants in an average of fewer than 5 days from when Texas sent its requests. *Id.* These include two extradition requests for which Governor Walz has signed rendition warrants in 10 days or less during the time Minnesota's extradition request for Castro has been pending with Governor Abbott's office. *Id.*

On May 21, 2026—12 days before the State of Minnesota sent the governor's requisition warrant for Castro to Governor Abbott's office—Minnesota submitted extradition requests to Texas for two other individuals charged in unrelated cases with felonies in Minnesota. *Id.* at ¶¶ 9 & 10. Governor Abbott's office issued rendition warrants for those two defendants on June 30, 2026, and July 1, 2026, respectively. *Id.* Both governor's rendition warrants were issued during the time Castro's extradition request was pending with Governor Abbott's office. Although nearly two more months

have passed, Governor Abbott continues to withhold the governor's rendition warrant for Castro.

On June 24, 2026—approximately three weeks after the State of Minnesota sent the governor's requisition warrant for Castro to Governor Abbott's office—Minnesota submitted an extradition request to Texas for a different individual charged with a felony in another unrelated case in Minnesota. *Id.* at ¶ 14. Governor Abbott signed a rendition warrant for that defendant on August 5, 2026, and issued it to the Hidalgo County Sheriff's Office for execution on August 13, 2026. *Id.* at Ex. I.

## LEGAL STANDARD

To obtain a TRO, a movant must show:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Fl. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)).

"As a tool of equity, [a] temporary restraining order[] can be mandatory, in that it mandates a specific course of conduct or the performance of an affirmative act." *La O Munoz v. Wolf*, 2020 WL 13556132, at *4 (S.D. Tex. Jul. 6, 2020) (citing *Alabama v. United States*, 304 F.2d 583, 590 (5th Cir. 1962)). Although the Fifth Circuit has indicated that mandatory preliminary relief "should not be issued unless the facts and law clearly favor the moving party," *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976), the Fifth Circuit has also recognized that "[w]here a sovereign state or nation is party plaintiff,

it is sometimes more certainly entitled to specific relief than a private party might be." *Alabama*, 304 F.2d at 591 & n. 24 (quoting *United States v. Raines*, 189 F. Supp. 121, 134 (M.D. Ga. 1960) & *State of Ga. v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907)).

## ARGUMENT

### I. Plaintiff Is Likely to Succeed on the Merits.

Governor Abbott's unlawful withholding of a rendition warrant to extradite Castro in response to a properly issued requisition warrant from Governor Walz is unprecedented. Governor Abbott has disregarded the requirements of the Constitution, federal law, and his own state's law by refusing to promptly extradite Castro to Minnesota. Because Governor Abbott's conduct violates his ministerial and non-discretionary duty, Plaintiff is likely to succeed on the merits of its claims.

#### A. The Extradition Clause and the Extradition Act of 1793

The Extradition Clause of the United States Constitution "creates a mandatory duty to deliver up fugitives upon proper demand[.]" *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987). The Extradition Clause provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Art. IV, § 2, cl. 2.

"[T]he commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or courts of the asylum state." *Branstad*, 483 U.S. at 227 (citing *California v. Superior Ct. of Cal.*, 482 U.S. 400, 405-06 (1987)). The Extradition Clause's "mandatory language furthers its intended purposes: 'to enable each

state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed,' and 'to preclude any state from becoming a sanctuary for fugitives from justice of another state.'" *Id.* (quoting *Michigan v. Doran*, 439 U.S. 282, 287 (1978)).

To effectuate the Extradition Clause and establish a procedure for interstate extraditions, Congress enacted the Extradition Act of 1793. *Superior Ct. of Cal.*, 482 U.S. at 406-07. The Extradition Act provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.[2]

18 U.S.C. § 3182.

"By the express terms of federal law, therefore, the asylum State is bound to deliver up to the demanding State's agent a fugitive against whom a properly certified indictment or affidavit charging a crime is lodged." *Superior Ct. of Cal.*, 482 U.S. at 407. "The

[2] For purposes of §3182, a person awaiting extradition may be discharged from custody if no agent from the requesting state appears within 30 days of the prisoner's arrest on the rendition warrant issued by the governor of the state in which the person was arrested (here, Texas). *See*, *e.g., Smith v. State of Idaho*, 373 F.2d 149, 158-59 (9th Cir. 1967). Because no rendition warrant has been issued in this case, and the State of Texas has not yet made Castro available to be transferred to an agent of the State of Minnesota, § 3182's 30-day deadline is not yet relevant here. Moreover, the discharge language in § 3182 is permissive and "do[es] not mandate the release of a fugitive after 30 days[.]" *Ellis v. Hargrove*, 2003 WL 22080743, at *1 (5th Cir. Sept. 9, 2003).

language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure." *Id.* Therefore, the Supreme Court has repeatedly held that "extradition proceedings are to be kept within narrow bounds; they are emphatically not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *Id.* (internal quotation marks omitted) (collecting cases).

"The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the *prompt* return of a fugitive from justice *as soon as the state from which he fled demands him*." *Sweeney v. Woodall*, 344 U.S. 86, 89 (1952) (emphases added).

Governor Abbott has received a proper demand from the State of Minnesota, and he therefore has a mandatory "ministerial duty" to deliver Castro for extradition to Minnesota pursuant to the Extradition Clause and the Extradition Act. *Branstad*, 483 U.S. at 227-28. Governor Abbott lacks any lawful basis to withhold the governor's rendition warrant for Castro. When a state fails in its constitutional duty to extradite a fugitive to another state—as Defendants have done here—the Extradition clause entitles the requesting state to mandamus relief. *Id.*; *Alabama v. Engler*, 85 F.3d 1205, 1210 (6th Cir. 1996) ("The Constitution forbids Governor Engler from refusing a proper request for extradition—regardless of the reasons he gives or the merits of any particular felon's case.").

### B. Texas Extradition Procedures and the Uniform Extradition Act

Under Texas law, "[i]nterstate extradition is intended to be a summary and mandatory executive proceeding." *Ex Parte Lekavich*, 145 S.W.3d 699, 700 (Tex. App. 2004). Texas's role, as the state to which Castro traveled, "is essentially administrative." *Ex Parte Scott*, 476 S.W.3d 93, 95 (Tex. App. 2015) (citing *Doran*, 439 U.S. at 288, for the proposition that "interstate extradition should be a summary process"). As the state from which Minnesota is seeking extradition, Texas considers only "whether the extradition documents are valid on their face and whether the arrestee is the same person named in the request." *Id.* (citation omitted). In executing an extradition to another state, Texas is "not concerned with more substantive matters such as the guilt or innocence of the arrestee or the presence of probable cause because those are issues to be resolved by the courts of the demanding state." *Id.* (citations omitted).

The Texas Code of Criminal Procedure contains a clear requirement that, consistent with the Extradition Clause and the Extradition Act, Texas must respond to an extradition request from the governor of another state by turning over the fugitive: "A person in any other State of the United States charged with treason or any felony who shall flee from justice and be found in this State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Tex. Code Crim. P. art. 51.01. Texas has also adopted the Uniform Criminal Extradition Act, which provides that "it is the duty of the Governor of [Texas] to have arrested and delivered up to the Executive Authority of any other State

of the United States any person charged in that State with treason, felony, or any other crime, who has fled from justice and is found in [Texas]." *Id.* at art. 51.13 § 2.

The Uniform Criminal Extradition Act provides the procedure for a fugitive who is arrested in Texas to be extradited to the state in which the fugitive is charged. In relevant part, the procedure requires that (1) the demanding state makes a written demand (often referred to as the "governor's requisition warrant") for the person's extradition that includes a copy of an affidavit before a magistrate charging the person with committing a crime and a warrant, *id.* at art. 51.13 § 3; and (2) the Governor of Texas signs a warrant of arrest (often referred to as the "governor's rendition warrant" or "governor's extradition warrant") and directs a peace officer to execute it, *id.* at art. 51.13 § 7.

A fugitive who is arrested in Texas and is awaiting extradition is entitled to a hearing before a magistrate. The fugitive may be ordered to pay bail or may be committed to jail pending extradition. The fugitive may not be committed to jail for longer than 90 days if he is not arrested on a governor's rendition warrant issued by the Governor of Texas. *Id.* at art. 51.05 & art. 51.13 §§ 15, 17. As a result of this 90-day limitation on detention pending the issuance of a governor's rendition warrant, Texas courts refer to a rendition warrant as "timely" if it is issued within 90 days of the fugitive's arrest pursuant to a fugitive warrant in Texas. *See*, *e.g.*, *Ex Parte Wall*, 2012 WL 5869595, at *5-7 (Tex. App. Nov. 21, 2012) (not designated for publication).

Here, Governor Walz has provided Governor Abbott with extradition documents for Castro that are valid on their face. Johnson Decl., Ex. A. The extradition documents include two sworn affidavits sufficient to establish that Castro is the same person named

in the request. *Id.* at Ex. A, 7-12. As a result, Governor Abbott has a mandatory obligation to execute the rendition warrant and provide for Castro's extradition back to Minnesota. *See Ex Parte Lekavich*, 145 S.W.3d at 700; *Ex Parte Scott*, 476 S.W.3d at 93.

**II. Plaintiff Faces Imminent Irreparable Harm.**

Unless Defendants are ordered to immediately make Castro available to agents of the State of Minnesota for extradition back to Minnesota, Plaintiff faces imminent irreparable harm.

First, a plaintiff suffers irreparable injury when the injury "cannot be undone through monetary remedies." *Polk v. Crawford*, -- F.4th --, 2026 WL 2240022, at *7 (5th Cir. Aug. 4, 2026) (holding plaintiff demonstrated irreparable injury where Texas official failed to issue him a license). Moreover, the infringement of a constitutional right "for even minimal periods of time . . . unquestionably constitutes irreparable injury." *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021). Here, Minnesota has a constitutional right under the Extradition Clause to Castro's return to Minnesota for prosecution. Minnesota also has a Tenth Amendment right to enforce its criminal laws. Governor Abbott's continued withholding of the rendition warrant and failure to extradite Castro infringe both of those constitutional rights and suffice, on their own, to establish irreparable harm to Minnesota.

Second, the imminent threat to Minnesota's constitutional rights is heightened by the substantial risk that if Castro is released from custody in Texas, he will flee to avoid prosecution in Minnesota. If Governor Abbott continues to withhold the rendition warrant, Castro may be eligible for release from custody as soon as August 26, 2026. *See*

Tex. Code Crim. P. arts. 51.05, 51.07 & 51.13 §§ 15, 17. If Sheriff Trevino and the Cameron County Sheriff's Department release Castro from custody following the expiration of the 90-day limitation on detention, he cannot be arrested again in Texas on the same charges except by a warrant from the Governor of Texas. *Id.* at art. 51.08. Castro's release from custody, standing alone, would frustrate Minnesota's right to extradition and its ability to prosecute Castro for crimes that occurred in Minnesota. But the risk of release is even more acute here because of the credible risk of flight.

If Sheriff Trevino releases Castro and Castro is permitted to flee to Mexico, it may be difficult or impossible to locate and have him re-arrested there. Then, the process to return him to Minnesota for prosecution would be time consuming and complex. International requests for extradition to the United States can typically only be initiated by the U.S. Department of Justice's Office of International Affairs ("OIA"). *See* Frequently Asked Questions Regarding Extradition, https://www.justice.gov/criminal/criminal-oia/frequently-asked-questions-regarding-extradition (last accessed Aug. 14, 2026). According to OIA, "[e]ven if there are no immediate legal impediments to extradition, it may take many months or even many years for the extradition request to be heard by the courts and for the executive authority to make a surrender decision." *Id.* If Castro is permitted to flee to Mexico, Plaintiff will be irreparably harmed in its ability to return him to Minnesota for prosecution.

## III. The Balance of Equities and the Public Interest Favor Immediate Relief.

When the government is the opposing party, the equities and the public interest factors for emergency relief merge. *Space Exploration Technologies Corp. v. NLRB*, 151

F.4th 761, 780 (5th Cir. 2025). And here, the public interest overwhelmingly favors immediate relief. The government suffers no harm when a court enforces a mandatory legal duty. *See id.* Moreover, "the public is served when the law is followed." *Id.* (quotation omitted). The public thus has the strongest interest in Castro's extradition from Texas to Minnesota taking place according to the Constitution, federal law, Texas law, and basic principles of interstate comity. If that were not enough, the public also has an interest in upholding a sovereign's right to enforce its criminal laws by obtaining the extradition of a fugitive who left the state and is charged with committing crimes within the state's borders. *See Heath v. Alabama,* 474 U.S. 82, 93 (1985) ("Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code."). And there is, of course, no public interest in Defendants unlawfully continuing to delay Castro's extradition back to Minnesota pursuant to a properly executed requisition warrant issued by Governor Walz. *See Wages & White Lion Inv., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021) (stating that there is no public interest in unlawful government action).

## IV. The Court Should Not Require Plaintiff to Provide Security.

The Court should not require a bond under Fed. R. Civ. P. 65. "[T]he amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court," and the court "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because the relief here will not cause Defendants to suffer any financial loss, courts typically require no security. *See*, *e.g.*, *Texas v. United States Dep't of Labor*, 738 F. Supp. 3d 807, 829 (E.D. Tex. 2024). And security is typically not

required when a government entity brings the underlying lawsuit. *See*, *e.g.*, *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, 636 F.2d 1084, 1094 (5th Cir. 1981).

## CONCLUSION

For the foregoing reasons, the Court should issue the proposed TRO.

Dated: August 18, 2026

Respectfully submitted,

/s/ *George C. Lobb, Esq.*
GEORGE C. LOBB, ESQ.
TX State Bar No. 24042928
S.D. Tex. Bar No. 1439085
2028 Ben White Blvd.
Suite 240-8990
Austin, TX 78741
(737) 396-2662
Inboxforlawoffice@iCloud.com

KEITH ELLISON
Attorney General
State of Minnesota

/s/ *Peter J. Farrell*
PETER J. FARRELL*
Acting Solicitor General
Attorney-in-Charge
MN State Bar No. 0393071
KIMBERLY SVENDSEN*
Special Counsel
MN State Bar No. 0504097
LINDSEY MIDDLECAMP*
Special Counsel
MN State Bar No. 0392589
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1424
peter.farrell@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota, ex rel. Governor Tim Walz and Attorney General Keith Ellison*

**Pro hac vice application forthcoming*